UNITED STATES of America,
Plaintiff-Appellee,

v.

Francisco MIRELES,
Defendant-Appellant.

No. 81–2113.

United States Court of Appeals,
Fifth Circuit.

April 19, 1982.

---

Dan Alfaro, Frank G. Davila, Corpus Christi, Tex., for defendant-appellant.

James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN, GEE and GARWOOD, Circuit Judges.

PER CURIAM:

Francisco Mireles appeals from his conviction for possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).[1] He alleges that the prosecutor's improper remarks in closing argument prejudiced his right to a fair trial. Finding no support in the record for such a contention, we affirm.

### Facts

On September 3, 1980, border patrol agents stopped Mireles at the checkpoint near Falfurias, Texas. Agent Sam Santana, while questioning Mireles about citizenship, detected the odor of marijuana emanating from the rear of the cab of the truck Mireles was driving. Inspecting the truck, Santana noted a discrepancy between its inside and outside dimensions. Further probing revealed 557 pounds of marijuana bricks hidden in the cab.

Santana placed Mireles under arrest and advised him of his rights. Special Agent James Anderson of the Drug Enforcement Agency interviewed Mireles, who told him that he was going "nowhere" with the truck and that it did not belong to him.

At trial Mireles, testifying in his own behalf, related several conflicting versions of a story involving meeting with a mysterious fat man named "El Gordo". "El Gordo", Mireles claimed, hired him to drive the truck to Houston to pick up a load of tires.

---

1. The statute provides that:

Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. . . .

The defense also called Cesar De La Garza, a clinical psychologist, who testified to Mireles' low level of intelligence. They argued that Mireles could not have planned such a smuggling operation.

The jury obviously did not believe Mireles' rather farfetched tale and found him guilty. The Court sentenced him to three years' imprisonment and a special parole term of two years, pursuant to 18 U.S.C. § 4205(b)(2).

## Discussion

■ Mireles asserts that the prosecutor made improper comments at several different points during closing argument which violated his constitutionally protected right to a fair trial. We set out the transcript excerpts below.[2] None of the prosecutor's remarks, taken singly or cumulatively, merits reversal.

■ It is settled law that "the test in determining the existence of prosecutorial misconduct regarding closing arguments is whether the remarks were improper and whether they prejudicially affected substantial rights of the defendants." *U. S. v. Dorr*, 636 F.2d 117, 120 (5th Cir. 1981), citing *U. S. v. Garza*, 608 F.2d 659, 663 (5th Cir. 1979). Wrote Justice Sutherland, in a leading case on the subject, *Berger v. Unit-*

---

2. During closing, the prosecutor made a number of comments that Mireles now attacks. References to Mr. Alfaro are to the defendant's trial attorney.

So I think coming into the case, the Government has proven its case beyond a reasonable doubt. But that's not the end here in this trial. There was a defense. And how in the world do you overcome the magnitude of proof that the Government presented here to this jury in connection with this Defendant? The only way you can do that is with ingenuity. And so I'm going to let Mr. Alfaro and his associate talk to you a little bit about ingenuity.

\* \* \* \* \* \*

Now, I was talking about ingenuity earlier. About how I was going to let Mr. Alfaro and his associate talk to you a little bit about ingenuity. And the ingenuity in a defense is that a client didn't know what he was doing because he's not very smart.

\* \* \* \* \* \*

But its awfully ingenious that Mr. Alfaro through the defense, has almost got most of us believing that perhaps El Gordo really exists.

\* \* \* \* \* \*

I think Mr. Alfaro presented the epitome of the combatant to you himself right here today. He is an excellant combatant . . .

\* \* \* \* \* \*

Now, in a truth-finding forum like this, how in the world can Mr. Alfaro criticize me for asking a question like that? He can do it because he is the epitome of a combatant. He can try to make this jury hate me because if you hate me, you might turn his client lose. That's how he can do it.

\* \* \* \* \* \*

I said, "But, doctor, how did he get to your office?" And Dr. De La Garza said, "Mr. Alfaro made the appointment." Mr. Alfaro wants you to hate me.

And you know what that predisposition is. He wanted to help him. Somehow he wanted to help that man. Because he was willing to step completely out of his legitimate scientific profession and say he didn't know [whether Defendant could bias the psychological test given him]. He made an assumption.

\* \* \* \* \* \*

We all do that. We're all favorably disposed.

\* \* \* \* \* \*

Well, you know, I don't think that Dr. De La Garza would have been quite as willing to stand before a school board and call that Defendant marginally retarded, mentally retarded, as he was to sit in front of this jury and tell you that.

\* \* \* \* \* \*

And I don't know whether you are as amazed as I was that Dr. De La Garza seemed to discount the importance of cultural bias. Because we all know, it is common knowledge that it is a very relevant consideration.

\* \* \* \* \* \*

Now, we're all talking as if somebody named Gordo or El Gordo really existed. Would the real El Gordo stand up back here? If you went outside and pointed your finger around the world and said, "will the real

\* \* \* \* \* \*

El Gordo of this case stand up," I submit that you may not ever find one.

\* \* \* \* \* \*

Now, Mr. Burch said the Defendant only did one thing. He was guilty of bad judgment. I submit to you that he was guilty of considerably more than bad judgment. He was guilty of bad judgment several different times. He was guilty of bad judgment yesterday when he came into this Courtroom.

*ed States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935):

> [The U. S. Attorney] may prosecute with earnestness—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

295 U.S. at 88, 55 S.Ct. at 633, 79 L.Ed. at 1321. *See also U. S. v. Bright*, 630 F.2d 804, 825 (5th Cir. 1981); *U. S. v. Martinez*, 616 F.2d 185 (5th Cir.), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1694, 68 L.Ed.2d 193 (1981). We conclude that the prosecutor's comments, whether hard or not, most definitely were not below the belt.

■ The prosecutor's comments about ingenuity, we believe, are a compliment to Mireles' attorney's diligence in the face of overwhelming evidence of guilt. In no way can his statement, following his discussion of the amount of evidence the government presented, that "I'm going to let Mr. Alfaro and his associate talk to you a little about ingenuity" constitute reversible, prosecutorial misconduct.

■ On the issue of "combativeness", the prosecutor and defense counsel formed part of a mutual admiration society. As Mr. Alfaro, who first used the word, told the jury, the prosecutor "is a very skilled prosecutor. And he's done his job here for a number of years well. He's combative. He likes to win." We are no more inclined to chastise one for his comment than we are to scold the other for his.

■ The prosecutor spoke of Mireles' "bad judgment yesterday when he came into this courtroom". Examining that comment in context, we are convinced that he intended to reinforce for the jury the fact that Mireles changed his story several times during cross-examination—certainly a permissible action. We see no impropriety in this statement.

■ Finally, as to the comments about Dr. De La Garza, while we have our doubts that information about "cultural bias" in

intelligence tests is common knowledge, we believe the prosecutor could properly raise this question in closing argument since the doctor so summarily denied any possibility of cultural bias in the testing. A prosecutor certainly may seek to discount the testimony of an expert witness, if he does so fairly.

■ The prosecutor also intimated that the psychologist might have testified differently before a school board. The District Judge found that defense counsel "opened [this point] up" by referring to his school teacher down in the Valley. While we suspect that both comments rivalled in irrelevancy, and assuming without deciding that Mr. Alfaro did not open this point up, we remain convinced that the prosecutor's remark was, at most, harmless error. *Berger, supra*, 295 U.S. at 82, 55 S.Ct. at 630; *U. S. v. Rodriguez*, 585 F.2d 1234, 1243 (5th Cir. 1978), *on reh. en banc*, 612 F.2d 906 (5th Cir. 1980), *aff'd. sub nom. Albernaz v. U. S.*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *U. S. v. Morris*, 568 F.2d 396, 402 (5th Cir. 1978). Given the magnitude of the proof of guilt, such a trifling misstatement, if error at all, was well within the realm of harmless error.

AFFIRMED.