**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ronald Wayne DAVIS,
Defendant-Appellant.**

**No. 85–4450.**

United States Court of Appeals,
Fifth Circuit.

April 22, 1986.

---

1300

Robert B. McDuff, University, Miss., for defendant-appellant.

Glen H. Davidson, U.S. Atty., John M. Alexander, Asst. U.S. Atty., Oxford, Miss., for plaintiff-appellee.

Before GEE and GARWOOD, Circuit Judges, and HINOJOSA, District Judge.[*]

GARWOOD, Circuit Judge:

Appellant Ronald Wayne Davis appeals his conviction of possessing firearms in interstate commerce after having been convicted of a felony in violation of 18 U.S.C. App. § 1202(a)(1). We had previously reversed a pretrial order suppressing the firearms on the ground that Davis' consent to the search which produced them had been procured by deceit. *United States v. Davis*, 749 F.2d 292 (5th Cir.1985). Davis now claims his conviction should be reversed because of diverse asserted trial errors. We affirm.

#### Facts and Proceedings Below

In May 1982, Agent Don Medley of the Federal Bureau of Alcohol, Tobacco and Firearms received a report of a person carrying an illegal machine gun in Panola County, Mississippi. Agent Medley, assisted by Panola County Deputy Sheriff Bill Joiner, interviewed Billy Woods (appellant's uncle) and later Mr. Woods' wife about the machine gun. After the interview with Mrs. Woods, the officers decided to question the Woodses' nephew appellant Davis

[*] District Judge of the Southern District of Texas, sitting by designation.

who, with his wife Celeste, was in town visiting his mother and stepfather. Before speaking to Davis, Agent Medley learned that Davis had a 1980 felony conviction for possession of marihuana for which Davis had received a three-year suspended sentence. Agent Medley knew that it was illegal for Davis, as a convicted felon, to possess any firearm in interstate commerce.

On May 5, 1982, Agent Medley and Deputy Joiner found Davis at the Panola County home of his mother and stepfather. After conversing briefly with the law enforcement officers, Davis reportedly asked the officers to step inside the house so that they could see his firearms. Davis thought that if he proved to Medley and Joiner that he did not possess or have knowledge of a machine gun, he would clear himself of suspicion. After Davis displayed two pistols, two shotguns and three rifles, none fully automatic, Agent Medley told him that it was illegal for him to possess firearms. Davis was then read his *Miranda* rights. Davis signed a form abandoning the guns to the officers.

Davis was subsequently indicted on May 27, 1983 for possession in interstate commerce of these seven firearms, each described by make, model, and serial number, after having been convicted of a felony, a violation of 18 U.S.C.App. § 1202(a)(1). The offense was alleged to have been committed "on or about May 5, 1982, in the Northern District of Mississippi."

The indictment was originally dismissed after the district court, Judge Keady, granted a pretrial motion to suppress, finding that the discovery of the guns resulted from a warrantless search, Davis' consent to which had been obtained by deceit. Although this motion to suppress, and the hearing on it, extended to statements made by Davis prior to being warned under *Miranda*, as well as to the firearms themselves and the legality of the search, Judge Keady ruled only on the search and firearms suppression issues. As noted, we reversed, holding that the search was validly consented to and that Davis freely and voluntarily produced the guns. *United States v. Davis*, supra. Thereafter, the case was transferred to Judge Biggers for trial.

Davis then filed a motion to suppress, essentially renewing the unruled on portion of the earlier motion seeking suppression of all his statements made to the law enforcement officers prior to being informed of his *Miranda* rights. An evidentiary hearing was requested, but none was held. Prior to the government's opening statement, defense counsel approached the bench to raise these issues. Judge Biggers denied the motion without holding an evidentiary hearing.

The government's primary witness at trial was Agent Medley, who testified about defendant's display of the seven firearms at the house on May 5, 1982 and his statements to the officers. These firearms were put in evidence. The records of Davis' April 1980 felony conviction were also introduced. The government called Officer Anderson of the Houston Police Department (HPD), who testified that on January 7, 1982, in Houston, he had taken two of these seven firearms from Davis. On rebuttal, Anderson further testified that the two firearms were released from the HPD property room on March 29, 1982.

The defense theory of the case, as reflected by defense counsel's statements to the jury panel on *voire dire* and, with greater specificity, in counsel's opening statement to the jury prior to the introduction of any evidence, was that although Davis, whose 1980 conviction counsel admitted, had indeed brought the firearms from Texas to Panola County, Mississippi "around late 1981, early 1982," nevertheless, on May 5, 1982, Davis did not own or possess the guns, because he "had given the guns several months earlier to his step-father," and Davis was not living with his mother and step-father in May 1982, but was simply there on a brief visit. Davis testified in his own defense, generally as outlined in his counsel's opening statement. On direct examination, he acknowledged his 1980 conviction, and testified that he had owned

these guns while he was in Texas and brought them with him when he and his wife traveled from Texas to Panola County, Mississippi during the second week of February 1982, making a complete and permanent gift of them to his stepfather when he arrived. He also stated that he and his wife then left Panola County and did not return until late April 1982, when they came back for a visit. The defense also called Davis' wife, mother, and stepfather, who gave testimony generally to like effect, although being somewhat less precise about when Davis came with the guns. The stepfather's testimony in this respect was particularly vague. In sum, Davis judicially admitted possessing the particular guns in question in interstate commerce in the Northern District of Mississippi after he had been convicted of a felony, contrary to section 1202(a)(1), but asserted that the offense was committed in mid-February 1982, not "on or about May 5, 1982," as charged in the indictment.[1]

The jury found Davis guilty, and he was sentenced to two years in prison. This appeal follows.

## Discussion

### *Personal Knowledge of Witness*

Davis first contends that government witness HPD Officer Anderson was allowed to give rebuttal testimony not adequately shown to be within his own personal knowledge, as required by Fed.R.Evid. (Rule) 602.[2] Officer Anderson had testified on the government's case in chief that he had taken two of the guns in question from Davis on January 7, 1982 in Houston; he identified the marks he had placed on the guns at that time, identified Davis and stated that he had "tag[ged]" the guns "into the police property room." On cross-examination, he testified he was then a "uniform patrolman" and "not involved with the Narcotics Bureau full time." An-

derson's presently challenged testimony came when he was recalled by the government as a rebuttal witness, and the following transpired:

"Q. [Mr. Alexander for the government]. When were those guns released out of the Houston Police Department?

"Mr. McDUFF [defense counsel]: Objection, Your Honor, to anything outside this witness' personal knowledge and outside any business records that he is qualified to introduce into evidence, otherwise, it is going to be hearsay.

"THE COURT: Overruled.

"MR. ALEXANDER:

"Q. When were these guns released from the Houston Police Department back to Mr. Davis?

"A. They were released on March the 29th, 1982.

"Q. All right. Where was that?

"A. That was in Houston, Texas at the police property room.

"Q. Were they—

"MR. McDUFF: I object again. This is hearsay. There is no indication that this witness is qualified to give this information or is using business records.

"MR. ALEXANDER: Your Honor, no further questions.

"THE COURT: Counsel should lay a proper predicate for that information.

"MR. ALEXANDER:

"Q. Mr. Anderson, *do you know of your own knowledge when these guns were released?*

"A. Yes, sir.

"Q. When?

"A. March the 29th, 1982.

"MR. ALEXANDER: No further questions." (Emphasis added.)

Davis' counsel then cross-examined Anderson, asking him "do you have any

---

1. The applicable limitations period for this offense is five years. 18 U.S.C. § 3282.

2. Rule 602 provides:
   "**Lack of Personal Knowledge**
   "A witness may not testify to a matter unless evidence is introduced sufficient to support a

finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses."

records with you showing when those weapons were released," to which Anderson answered that he had "a copy of the release form." Anderson replied in the negative when asked if he was "the custodian of these records" and if Davis' name appeared "on this form." Nothing was elicited on defense counsel's cross-examination indicating that Anderson did not have personal knowledge of when the guns were released, or that his testimony was based even partly on the form. Defense counsel then renewed his objection that Anderson's testimony was hearsay. The court overruled the objection. The government then established by questioning of Anderson that the form contained a description and serial numbers which matched those of the pistols introduced in evidence. The form was never offered in evidence.

Rule 602 clearly places on the proponent of the testimony the initial burden of showing that it represents the witness' personal knowledge. This is the general common law rule. *See, e.g.,* 2 Wigmore, *Evidence* § 654 at 883 (Chadbourn Rev.1979); McCormick, *Evidence* § 10 at 24 (3d ed. 1984). The question, then, is whether the government sufficiently met this initial burden. The district court, which doubtless has at least some discretion in determining such matters,[3] ruled that it did. While the question is a close one, we do not find that error has been demonstrated. Anderson had testified that he was a police officer, that he took the guns from Davis, marked them, and tagged them into the police property room. Thus a personal relationship between Anderson and Davis, the guns, and the property room was shown. When Anderson was asked the date the guns were released from the property room, objection was made "to anything outside this witness' personal knowledge." Thereafter, the witness answered affirmatively when asked whether he knew "of your own knowledge" when the guns were released. No objection was made to the form of this question, either as being too general or for any other reason. There is nothing in the record to suggest that Anderson did not, or even likely did not, have such personal knowledge. Davis had ample opportunity to cross-examine Anderson, or to take him on *voire dire,* to establish any lack of personal knowledge or opportunity for same, and he could have requested that this be done out of the presence of the jury. But he chose not to do any of this. Had he done so, and shown, for example, that Anderson was not present when the guns were released, Anderson's testimony in this respect would doubtless have been stricken if the prosecution did not show some other particular basis for personal knowledge. *See* 2 Wigmore, *supra,* § 654 at 884. If striking the testimony were arguably an inadequate remedy, a mistrial could be considered if the matter were sufficiently prejudicial.

We do not suggest that the trial court has discretion either to do away with the foundation requirement of Rule 602 or to allow testimony that is shown to be without adequate basis in personal knowledge. Nor do we suggest that the trial court must, or even should, accept a bare minimum initial showing of personal knowledge. But we believe that the trial court has some discretion in evaluating such an initial showing, and generally does not abuse that discretion by accepting as provisionally adequate witness' testimony that he has personal knowledge, when other evidence indicates that the witness had a personal connection to the subject matter, there is nothing to suggest that the witness likely did not have or could not have had such knowledge, and its probable absence could be easily shown, but opposing

---

3. *See, e.g., M.B.A.F.B. Federal Credit Union v. Cumis Insurance Society, Inc.,* 681 F.2d 930, 932 (4th Cir.1982), where the Court stated, "Evidence is inadmissible under this rule [Rule 602] only if in the proper exercise of the trial court's discretion it finds that the witness could not have actually perceived or observed that which he testifies to." We, of course, are not called upon to endorse or reject the precise language or ruling in *Cumis,* but merely cite it as illustrative of the recognition that the trial court does not wholly lack discretion in determining the adequacy of the initial showing of personal knowledge.

counsel, despite full opportunity to do so, wholly fails to make any such showing. That being the situation here, we reject Davis' claim of reversible error in this respect.[4]

*Improper Evidence*

■ Davis also claims that the district court erred in admitting evidence about the previous seizure of two of the firearms by the HPD and that Davis spent approximately $2,000 in obtaining the release of these firearms from the HPD. Davis asserts that this evidence was irrelevant and prejudicial under Rules 401 and 403 and should have been banned under Rule 404(b).[5]

We reject this contention. The evidence in question was relevant for purposes other than simply showing Davis' bad character. It tended to establish not only Davis' physical possession of the guns, but also that the possession was knowing and was in interstate commerce. *See United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). Further, it tended to show the time of possession, sometime after January 7, 1982, when the guns were taken from Davis in Houston, and indeed after March 29, 1982, when they were released by the HPD. This, of course, was relevant not only to the possession's being after the prior felony conviction, but also as tending to rebut the claim that Davis had given the guns to his stepfather "several months" prior to May 5, 1982. Finally, that Davis had been willing to pay such a large sum of money to reclaim the guns from the HPD could be considered as casting doubt on his claim that he shortly thereafter made a gift of them and five others to his stepfather.

We hold that the admission of this evidence did not violate Rule 404(b), since it did not tend to prove only criminal disposition, and that the district court did not clearly abuse its discretion in determining that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See United States v. Shaw*, 701 F.2d 367, 386 (5th Cir.1983), *cert. denied*, 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984).

■ Davis asserts that because he offered at trial to stipulate to the interstate commerce element, the government's proof in this respect should have been excluded under Rule 403. We will not adopt an inflexible rule that allows a party by stipulation to prevent his adversary's case from being presented in its appropriately full and real life context. *United States v. Grassi*, 602 F.2d 1192, 1197 (5th Cir.1979), *vacated on other grounds*, 448 U.S. 902, 100 S.Ct. 3041, 65 L.Ed.2d 1131 (1980); *see* 9 *Wigmore, supra*, § 2591. As we have observed, "in most cases, a party has the right 'to present to the jury a picture of the events relied upon.'" *Grassi*, 602 F.2d at 1197 (quoting *Parr v. United States*, 255 F.2d 86, 88 (5th Cir.), *cert. denied*, 358 U.S. 824, 79 S.Ct. 40, 3 L.Ed.2d 64 (1958)). *See also United States v. Spletzer*, 535 F.2d 950, 955–56 (5th Cir.1976) (dicta; recognizing general rule but stating that under those facts the offer to stipulate should have resulted in exclusion of portion of record of prior conviction under Rule 403). Although an offer to stipulate is relevant under Rule 403, it is not necessarily decisive. Further, as above-indicated, the prosecution's complained of evidence was relevant not only to interstate commerce, but

---

**4.** Davis' reliance on *United States v. Marshall*, 762 F.2d 419, 423–26 (5th Cir.1985), is misplaced, for there the witness did not purport to testify from personal knowledge but only as to conclusions drawn from examining a large group of records not placed in evidence.

**5.** Rule 404(b) provides:
"**Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It

may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
Rule 403 prohibits only *unfairly* prejudicial evidence, for all relevant evidence is inherently prejudicial. *See United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert. denied*, 100 S.Ct. 128 (1979). Moreover, the unfair prejudice must substantially outweigh the probative value of the evidence. Rule 403; *see id.*

also to when the possession occurred and to whether Davis made a gift of the guns to his stepfather. We conclude that under the facts here, Davis' offer to stipulate does not establish an abuse of discretion under Rule 403 in admitting the challenged evidence, and we reject Davis' claim in this respect.

■ Davis also contends that evidence that the investigation of him initiated with a search for a machine gun, which his uncle had been reported as possessing, was improperly admitted because it implicated him in other crimes despite the mandate of Rule 404(b), *see* note 5, *supra.* We do not agree. There was no evidence that Davis possessed a machine gun. However, the government had a legitimate interest in presenting the circumstances of Agent Medley's investigation of Davis. This was particularly relevant as placing in context Medley's testimony as to Davis' volunteered statements that when the guns were his—this testimony, which Davis disputed, being more believable because Davis then thought the agents were looking only for a machine gun.

■ Davis further asserts that the district court erred by failing to give his requested instruction on the irrelevancy of "other acts evidence" to prove that he committed the offense charged. The better practice would doubtless have been to give such an instruction. However, we find no reversible error here. To begin with, the court did instruct the jury that "[t]he Defendant is not on trial for any act or conduct or offense that is not alleged in the indictment," and went on to correctly explain in detail what precisely was charged in the indictment and what precisely the jury was required to find from the evidence beyond a reasonable doubt in order to convict. The jury was also separately instructed that Davis' 1980 marihuana conviction "is to be considered by you only as evidence of whether or not the Defendant was eligible to possess firearms under Section 1202" and "is not to be given any weight in determining whether or not the Government has proved beyond a reasonable

doubt that the Defendant actually possessed the firearms." More significantly, evidence of other crimes is improper only "to prove the character of a person in order to show that he acted in conformity therewith." Rule 404(b). Here plainly admissible evidence showed without dispute—indeed Davis and his witnesses established by their testimony—that he had in fact unlawfully possessed these very same guns in interstate commerce. His "propensity" to do this was clearly admitted, undisputed, and fully proved. The vague suggestion of other possible wrongdoing—and there was no evidence of any other specific offense, nor of any conviction (other than the predicate felony)—could in no meaningful way add to the force of this evidence. Davis' "defense" was not that he did not commit the precise offense at issue—possessing at his stepfather's place in Panola County these seven identical guns which he brought from Texas in 1982 after his 1980 felony conviction—it was that this all occurred some two to three months before the date charged in the indictment. In these circumstances, we conclude that any error in failing to give the requested instruction was harmless. Davis' reliance on *United States v. Diaz,* 585 F.2d 116 (5th Cir.1978), is misplaced. There we dealt with two prior *convictions* several years earlier for the same type of offense—here the only prior conviction was adequately instructed on, and there was no showing of the commission of any specific other offense. Moreover, there is nothing in the Diaz opinion to indicate that the factual situation there, so far as concerns potential prejudice, was similar to the relatively unique factual pattern presented by Davis' case.

*Prosecutorial Misconduct*

Davis asserts several instances of prosecutorial misconduct.

■ *A. Extra-record references.* The first claim is that during defense counsel's closing argument the government made reference to facts not in the record. While discussing Officer Anderson's testimony

concerning the release of the guns, Davis' attorney mentioned, quite accurately, that Davis' name was nowhere on the release form. Without first making an objection, the prosecutor simply interrupted: "It did have Davis' lawyer's name on it, though."

It is obvious—painfully obvious—that the prosecutor was guilty of misconduct in this connection. To begin with, orderly procedure cannot countenance interrupting opposing counsel's argument for the purpose of disputing or replying to it, or adding "facts" which are deemed relevant to the like. Even had the prosecutor's remarks been couched as an objection—and they were not—such an "objection" would have been a wholly improper attempt to make an extra and unauthorized jury argument and, unlike an objection that opposing counsel's argument goes outside the record or on some other legitimate ground, would not present any nonfrivolous matter to the court for its ruling thereon. This is all rather basic. But, unfortunately, it is not all. The fact is that the evidence does not show or suggest that the release form contained the name of Davis' counsel. Need we repeat that counsel may not go outside the record in argument? That, too, is basic.[6]

■ Nevertheless, we find that the error was clearly harmless. Just after the prosecutor's remark, defense counsel denied that there was any evidence that Davis' counsel's name was on the form and said he saw no name he recognized, and the court then pointed out that the only evidence on the subject was that defendant's name was not on the release form, all this being in the presence of the jury. No instruction to the jury was requested. The court's charge told the jury that their verdict had to be based only on the evidence introduced and that "any statements, objections, or arguments made by the attorneys are not evidence." Further, that Davis' counsel's name was on the form was not materially prejudicial. Davis had judicially admitted that he brought the guns from Houston to Panola County, Mississippi *after* he got them back from the HPD. Moreover, the evidence showed that the form had the correct description and serial number of each of the two guns in question.

■ *B. Closing Argument.* Davis further complains of the government's rebuttal closing argument, particularly the following statement of the prosecutor:

> "[BY MR. ALEXANDER]: It is not gun control, members of the jury, it is crime control. So many times and it is—I hate to say it, but so many times, all that stands between a criminal committing a lesser crime and committing a cold-blooded murder—"

Also during rebuttal closing, the government counsel, apparently responding to the defense closing argument assertion that the government improperly tried to label Davis a "big time drug dealer," stated:

> "Now, the Defendant would have you believe that there was something wrong with the Government putting on this witness from Houston, Texas. Excuse me—a policeman from Houston, Texas, who knows Ronald Wayne Davis. Well, if he did not know Davis, his testimony would be completely worthless. He wouldn't even be allowed to testify unless he knows Davis. The fact is that he knows him. He has for two years. The fact that this man is a narcotics officer, I am not trying to imply anything by that. The—Any inference that you draw, so be it, but—"

We find no reversible error in this connection.

---

**6.** Davis also claims the prosecutor erred by making any reference to the release form since it was not introduced in evidence. So far as this argument may assert some ground of error beyond that discussed in the text, we disagree: Davis' counsel had referred to the contents of the form in his argument, and indeed first introduced evidence about it and its contents.

As another aside, we observe that the prosecutor claims that when he made his unfortunate statement he honestly believed that Anderson had testified that Davis' lawyer's name was on the form. We do not suggest otherwise. Nor do we imply calculated wrongdoing; spontaneity stemming from inexperience and trial excitement seem more likely.

In evaluating improper argument claims, we have held that the reviewing court must " 'weigh the degree to which the alleged improper argument may have affected the substantial rights of the defendants.' " *United States v. McPhee*, 731 F.2d 1150, 1152 (5th Cir.1984) (quoting *United States v. Rhoden*, 453 F.2d 598, 600 (5th Cir. 1972)); *see United States v. Shackleford*, 709 F.2d 911, 913 (5th Cir.), *cert. denied*, 464 U.S. 899, 104 S.Ct. 253, 78 L.Ed.2d 239 (1983); *United States v. Mireles*, 673 F.2d 756, 758 (5th Cir.1982). Pertinent factors in making this determination include: "(1) the magnitude of the prejudicial effect of the statements, (2) the efficacy of any cautionary instructions, and (3) the strength of the evidence of defendant's guilt." *McPhee*, 731 F.2d at 1152. Using these factors, we are unable to find that Davis' substantial rights have been abridged.

Davis exaggerates the magnitude of the effects of these statements. The government's reference to cold-blooded murder is not reasonably understood as a reference to Davis, but instead is plainly a comment on the purpose of the statute under which Davis was charged and on the need to enforce the law strictly. Concerning "big time drug dealers," no argument was made that Davis was a drug dealer of any sort, although it is true that the government, in a brief passing remark, improperly implied an oblique invitation to the jury to make some inference respecting Davis and narcotics. We note that the jury already had before it Davis' felony marihuana conviction as the requisite felony for the commission of this crime. We are convinced that in the overall setting of this case these complained of remarks simply were not significant.

*C. Other Instances.* Davis points to a couple of occasions where the prosecutor attempted to ask improper questions about possessing other guns sometime after May 1982, but in each case objection was sustained or no harmful information was elicited. These incidents are essentially insignificant.

Viewing the trial as a whole and considering all of Davis' claims of misconduct together, we find that his substantial rights were not violated and that no reversible error is presented. By the same token, however, the prosecutor's conduct was wholly unacceptable. Should there be other instances of similarly serious misconduct, active consideration may have to be given to whether some form of disciplinary proceeding is appropriate.

Miranda *Hearing*

■ Davis' final contention is that the district court erred in failing to conduct a hearing, out of the presence of the jury, to determine whether certain statements made by him before he was read his *Miranda* rights were "voluntary." [7] Davis claims that such a hearing was necessary to decide if he was in custody when he made these statements to Agent Medley and Deputy Joiner at his stepfather's house on May 5, 1982.[8] He asserts that since he placed in issue the "voluntariness" of these statements, he must be afforded a hearing under 18 U.S.C. § 3501. We find, however, that Davis has had his hearing and thus decline to order another.

On the prior appeal, we held valid the seizure of Davis' guns, but were not presented with the suppression of statements issue. Although the defense motion and hearing before him had covered both issues, Judge Keady decided only the suppression of the weapons issue. However, a hearing *was* held by Judge Keady on the *Miranda* claim. Judge Biggers, who determined this issue on remand, declined to order another hearing to determine the

---

**7.** Davis has also properly preserved his claim that our ruling on the prior appeal (*United States v. Davis*, 749 F.2d 292 (5th Cir.1985)) was in error. He advances no new factual or legal contentions, and we decline to depart from our prior holding.

**8.** *Miranda* warnings may be required even if the defendant is in his own home, provided he is in the equivalent of custody. *See Orozoco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969).

"voluntariness" of the statements and ruled on the basis of the parties' briefs.

We decline to grant another hearing because an adequate hearing has already been conducted in this case. We might find Davis' claim more appealing if there was an actual credibility issue in the first hearing over the operative facts about whether Davis was in custody when he made statements to the officers. Because Davis had the burden of proving that he was under arrest or in custody, *see, e.g., United States v. Charles,* 738 F.2d 686, 692 (5th Cir.1984); *United States v. De La Fuente,* 548 F.2d 528, 533 (5th Cir.), *cert. denied,* 431 U.S. 942, 97 S.Ct. 2640, 53 L.Ed.2d 249 and 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312 (1977), it is assumed that Davis did in fact present all his favorable evidence on this issue to Judge Keady. Nor has Davis suggested that he has any additional evidence or legal theory not previously presented.

The only evidence Davis presented to Judge Keady on the issue of custody, however, was his subjective opinion that he did not in fact feel free to leave.[9] This simply cannot overcome the other affirmative evidence in the record that Davis was not in custody. Both officers clearly and expressly testified that Davis was not arrested or in custody and was not told that he was. Indeed, it is undisputed that the officers did not place Davis under arrest ever *after* he was read his *Miranda* rights, which occurred after he showed the officers the guns. Moreover, there is no hint in the record of the suppression hearing that Davis was ever told that his movement was restricted, and there is no evidence that he was so restricted. Davis admitted that he freely consented to letting the officers into the house to see the guns. He did so, he said, because he thought they were only looking for a machine gun, which he did not have. Except for presently immaterial minor divergences, disputes over who mentioned machine guns first and just what

Davis said about the guns he showed the officers, the facts are not really disputed and they show that Davis was not in custody. The crucial issues, the time of the *Miranda* warning and Davis' voluntarily admitting the officers into his house and surrendering the guns, were not materially disputed. We also note that Judge Biggers relied on the parties' briefs and had available the record of the hearing before Judge Keady. Again examining the record, we find that our characterization of it on the prior appeal to be accurate. We there noted that "[i]t is undisputed that Davis volunteered the information that he had other guns," 749 F.2d 292 at 293, that "he let the officers into the house to see his guns because he believed that the officers were looking for a machine gun and he wanted to clear himself of suspicion," *id.* at 294, and that

"[t]here is no evidence that he was under any pressure or coercion to let them in. The consent was given in a noncustodial situation. The officers did not search the house; rather, Davis freely walked around the house and produced various firearms. Immediately after Davis displayed the firearms, agent Medley told Davis that his possession of firearms was illegal and advised him of his rights. Davis stated that he understood his rights and he voluntarily waived them. Davis was not placed under arrest. There has been no claim of any intimidation coercion, or threats of force." *Id.* at 296.

The record at the hearing before Judge Keady, where these matters were in issue, establishes that Davis was not in custody prior to being warned of his *Miranda* rights, that he knowingly and voluntarily waived those rights, and that his statements as testified to by Agent Medley were voluntary. Davis was not entitled to another hearing on these matters.

**9.** Apart from the question of custody, there is nothing whatever to suggest anything but complete voluntariness. The evidence before Judge Keady—as well as that in the trial itself—affirmatively shows without contradiction that Davis' statements (which he claims were exculpatory and which the officers claim he *thought* were exculpatory) were wholly voluntary.

**1310**

### Conclusion

We reject all Davis' claims of reversible error and his conviction and sentence are accordingly affirmed.

**AFFIRMED.**