**UNITED STATES of America,
Plaintiff,**

v.

**Michael NEWTON, Defendant.**

**No. CR–3–02–094.**

United States District Court,
S.D. Ohio,
Western Division.

July 29, 2003.

---

Vincent Paul Popp, Popp & Tuss, Dayton, OH, for Defendant.

Sheila Gay Lafferty, United States Attorney's Office, Dayton, OH, for Plaintiff.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS (DOC. # 11); CONFERENCE CALL TO BE SET

RICE, Chief Judge.

Defendant Michael Newton is charged in the Indictment (Doc. # 8) with one count of possessing an unregistered, short barrel shotgun, in violation of 26 U.S.C. § 5861(d). This prosecution stems from a police officer's seizure of a short barrel shotgun from the closet in a bedroom of the Defendant's residence on August 19, 2002. This case is now before the Court on the Defendant's Motion to Suppress Evidence and Statements (Doc. # 11), with which he seeks the suppression of the short barrel shotgun, as well as any statements he may have made about that weapon. On February 7, 2003, this Court conducted an oral and evidentiary hearing on the Defendant's motion. The parties have filed their post-hearing memoranda. *See* Docs. # 16 and # 17. The Court now rules on the Defendant's motion, beginning its analysis by reviewing what the evidence established.

On August 19, 2002, Officers Richard Ring ("Ring") and Eric Totel ("Totel") of the Englewood, Ohio, Police Department were dispatched to a residence located at 34 Brussels Avenue, in response to a domestic violence call. When the officers arrived at that location, they met Kathy Newton, the Defendant's wife. Kathy Newton explained that her husband had accused her of being unfaithful and the two had argued. During that argument, the Defendant had turned violent.[1] Thereafter, the Defendant had left, taking some of his belongings and going to his parents' house. At some point after the Defendant had left 34 Brussels Avenue and before the

---

1. The officers observed bruising on Kathy Newton's neck.

officers arrived at that residence, the Defendant and Kathy Newton communicated by telephone, during which the Defendant threatened to kill his wife. As a result of the events which had occurred, Kathy Newton was upset and crying when the officers arrived.

After Ring and Totel had arrived at 34 Brussels Avenue, Ring conversed with Kathy Newton and was able to calm her down. While Ring was conversing with her, Totel was taking pictures of the interior of that residence.[2] When Totel took photographs in the master bedroom, he observed a closet without a door. On the top shelf of that closet, Totel saw a pistol. He did not, at that point seize the pistol or enter that closet. Rather, Totel subsequently asked Kathy Newton whether there were any weapons in the house. She indicated that a pistol was located on the shelf in the closet. She also said that a "sawed-off shotgun" was leaning against a wall of that closet. Kathy Newton also requested that Totel remove the two weapons and their ammunition from her house. Totel acceded to that request and removed the pistol, short barrel shotgun and ammunition from the closet in the bedroom Kathy Newton shared with her husband.[3]

While Ring and Totel were at 34 Brussels Avenue, Kathy Newton's parents arrived at that location. They helped her pack her belongings and she left with them to stay at their house. After Ring and Totel had left 34 Brussels Avenue, Ring contacted the Vandalia Police Department in an effort to locate the Defendant.[4] Officials from that Police Department subsequently told Ring that the Defendant was returning to 34 Brussels Avenue. As a consequence, Ring and Totel returned to that location. Upon arrival, Ring knocked on the front door, and the Defendant answered it. Ring told the Defendant that he was under arrest for domestic violence and possession of a dangerous ordinance.[5] The Defendant was taken into custody and placed in the back of Ring's police cruiser for transport to the jail. Neither Ring nor Totel questioned the Defendant or read him the *Miranda* warnings at that time. Once, while he was sitting in the back of Ring's vehicle, before they had left 34 Brussels Avenue, and, again, while they were traveling to the jail, the Defendant made a voluntary statement to Ring concerning the short barrel shotgun (as opposed to a statement in response to questioning by Ring or Totel).

In his post-hearing memorandum, the Defendant argues that the Court must suppress the short barrel shotgun, because its seizure violated the Fourth Amendment, and that his statements to police officers must be suppressed, because he had not been not given the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). As a means of analysis, the Court will initially address the parties' arguments concerning the Defendant's request to suppress the short barrel shotgun, following which it will turn to their assertions relating to his request to suppress his statements.

---

**2.** The Defendant has not argued that Totel violated his rights under the Fourth Amendment by taking pictures of the interior of his residence.

**3.** When he removed the pistol, Totel discovered that it was a pellet gun.

**4.** After his confrontation with his wife, the Defendant had left 34 Brussels Avenue had gone to stay with his parents who lived in Vandalia.

**5.** Ring explained to the Defendant that the dangerous ordinance was the short barrel shotgun which Totel had removed from the closet at 34 Brussels Avenue.

*I. Suppression of Short Barrel Shotgun*

The Defendant argues that the short barrel shotgun must be suppressed, because Kathy Newton did not consent to its seizure and, if she did, that consent was not valid, given that she did not have common authority over the closet from which that weapon was seized. As a means of analysis, the Court will initially address the Defendant's assertion that Kathy Newton did not consent, following which it will turn to his assertion that any consent she may have given was invalid. However, before engaging in that analysis, it should be noted that, *if* Kathy Newton did not validly consent to Totel's actions, it is clear that Totel violated the Defendant's Fourth Amendment rights by entering the closet in the bedroom which he shared with his wife and removing the short barrel shotgun.

■ In *United States v. Wellman,* 185 F.3d 651 (6th Cir.1999), the Sixth Circuit restated the principles which are applicable to the question of whether a person has validly consented to a search:

> When seeking to justify a search based on consent, the government has the burden of showing by a preponderance of the evidence that the consent was freely and voluntarily given and was not the result of coercion, duress, or submission to a claim of authority. *Bumper v. North Carolina,* 391 U.S. 543, 548[, 88 S.Ct. 1788, 20 L.Ed.2d 797] (1968). The voluntariness of the consent is determined by the "totality of the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227[, 93 S.Ct. 2041, 36 L.Ed.2d 854] (1973).

*Id.* at 656–57. Herein, the Court concludes that the Government has met its burden of proving by the preponderance of the evidence that Kathy Newton freely and voluntarily consented to the seizure of the short barrel shotgun from the closet in her bedroom in the residence at 34 Brussels Avenue, rather than her consent being the product of coercion, duress, or submission to a claim of authority.

The Defendant argues that Kathy Newton did not consent to the seizure of the short barrel shotgun, because she was upset and had been crying when she spoke with Totel. The Court agrees with the Defendant that Kathy Newton was quite understandably visibly upset when Ring and Totel arrived at her residence, given that she had been assaulted by her husband who subsequently had threatened to kill her. However, by the time she asked Totel to remove the weapons from her residence, she had become more calm. There was simply no evidence that Kathy Newton's consent to the seizure of the short barrel shotgun was the product of coercion, duress, or submission to a claim of authority by either Ring or Totel. Moreover, it bears emphasis that Kathy Newton did not acquiesce to a request from one of the officers that she consent to the removal of the short barrel shotgun. On the contrary, she asked the officers to do so. Accordingly, the Court finds that the Government has proved by the preponderance of the evidence that Kathy Newton freely and voluntarily consented to the seizure of the short barrel shotgun from the closet in the bedroom which she shared with her husband.[6]

---

**6.** The Defendant also argues that Kathy Newton's testimony during the suppression hearing that she was confused when she interacted with Ring and Totel and that she had previously been drinking shows that she did not consent to the seizure of the short barrel shotgun. This Court did not find Kathy Newton's testimony about her interaction with the officers to be credible, since she appeared to be trying to protect the Defendant. Therefore, that testimony did not cause the Court to conclude that the Government had failed to meet its burden of proving that Kathy Newton consented to the search of the closet and the seizure of the short barrel shotgun therefrom.

■ Alternatively, the Defendant asserts that Kathy Newton's consent was not valid, because she did not have common authority over the closet from which Totel removed the short barrel shotgun. In *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Supreme Court addressed the question of third-party consent. Therein, law enforcement officers arrested the defendant for a bank robbery. When arrested, the defendant was in the front yard of the house in which he had been living. The officers then went to the front door of that house and asked another resident for permission to search the house for money taken from the bank and the gun used in the robbery. The other resident gave the officers consent to search the house, including the bedroom which she shared with the defendant. The officers found the money and a gun in a diaper bag located in the only closet in that bedroom. The District Court sustained the defendant's motion to suppress that evidence, and the Seventh Circuit affirmed. Upon further appeal, the Supreme Court reversed, concluding that the consent by someone who possesses common authority over premises is valid as against an absent, nonconsenting person with whom that authority is shared. *Id.* at 170, 94 S.Ct. 988. The *Matlock* Court indicated that common authority rests on "mutual use of the property by persons generally having joint access or control for most purposes...." *Id.* at 171 n. 7, 94 S.Ct. 988. Herein, the Defendant argues that, although Kathy Nelson had common authority over the bedroom which she shared with her husband, she did not have common authority over the closet, because the Defendant used that closet exclusively to store his clothes and personal belongings. The Court need not resolve that question, because Totel and Ring reasonably believed that Kathy Newton had common authority over the closet in her bedroom.

In *Matlock*, the Supreme Court reserved the argument raised by the Government that it need only show that the officers reasonably believed that the person giving consent to search had sufficient authority over the premises to consent to the search. 415 U.S. at 177 n. 14, 94 S.Ct. 988. In *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), the Supreme Court answered that question. Therein, Chicago police officers were summoned to Dorothy Jackson's residence, because her daughter, Gail Fisher ("Fisher"), had been beaten. Fisher told the officers that the defendant had beaten her in another apartment. Fisher indicated that the defendant was asleep in that apartment, and agreed to travel with the officers there in order to open the door with her key, in order to permit the officers to enter that apartment and arrest the defendant. During the trip to the apartment, Fisher referred to it as "our" apartment and indicated that she had clothes therein. When they arrived at that apartment, Fisher opened the door with her key and gave the officers permission to enter. Inside, the officers observed cocaine and drug paraphernalia in plain view. That evidence was seized, and the defendant was charged with distributing drugs. He moved to suppress the evidence which officers had recovered from his apartment, arguing that Fisher did not possess common authority over the apartment, given that she no longer lived there. The trial court agreed with the defendant and rejected the state's argument that the evidence could not be suppressed, as long as the officers reasonably believed that Fisher had common authority over the apartment. The Illinois Appellate Court affirmed, and the Illinois Supreme declined further review. Upon further appeal, the United States Supreme Court reversed. The Supreme Court agreed with the Illinois courts that the state had failed to

prove that Fisher had common authority over the apartment, since she had previously moved out. However, the Supreme Court held that the Fourth Amendment is not violated when officers reasonably believe that the person consenting to their entry has common authority over the premises, even though their belief is erroneous.[7] *Id.* at 186, 110 S.Ct. 2793. *See also, United States v. Jenkins,* 92 F.3d 430, 436 (6th Cir.1996) ("When one person consents to a search of property owned by another, the consent is valid if the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises").

Herein, the evidence introduced during the hearing demonstrates that Totel and Ring reasonably believed that Kathy Newton had common authority over the closet in the bedroom she shared with her husband. As is indicated, there was only one closet in the bedroom which Kathy Newton shared with her husband. Moreover, there was no door on that closet. Both of those facts would lead a reasonable officer to the conclusion that the closet was not for the exclusive use of the Defendant. Additionally, Kathy Newton indicated that the short barrel shotgun and pellet gun were located in the closet in her bedroom, indicating to the officers that she had knowledge of the contents of the closet and, thus, mutual access to it. Accordingly, the Court concludes that Ring and Totel reasonably believed that Kathy Newton had common authority over the closet in the bedroom she shared with her husband, even assuming for sake of argument that

Kathy Newton did not share such authority with her husband over that closet.[8]

Based upon the foregoing, the Court overrules the Defendant's Motion to Suppress Evidence and Statements (Doc. # 11), as it relates to the short barrel shotgun.

## II. Suppression of Statements

The Defendant argues that his statements must be suppressed, because he was not given the requisite *Miranda* warnings before he made those statements. In response, the Government argues that it was not necessary to give *Miranda* warnings to the Defendant, because his statements were spontaneous, rather than being in response to a custodial interrogation. In *Miranda,* the Supreme Court held that a defendant need be given warnings only if he is to be subjected to a custodial interrogation. 384 U.S. at 477, 86 S.Ct. 1602. *See also, United States v. Galloway,* 316 F.3d 624, 628–29 (6th Cir.2003). As an initial matter, the Court agrees with the Defendant that there is no evidence that he was given his *Miranda* warnings. Ring, the officer to whom the Defendant made the statements, testified that he did not remember reading the warnings to the Defendant. Additionally, Totel did not indicate that he had given such to the Defendant. The Court also finds that the Defendant was in custody when he made the two statements, since he made them after he had been arrested. Thus, the question becomes whether the Defendant made his statements in response to an interrogation by Ring. In *Rhode Island v. Innis,* 446

---

**7.** The Supreme Court remanded the matter to the Illinois courts to determine whether the officers reasonably believed that Fisher had common authority over the apartment.

**8.** In arguing that the officers did not have such a reasonable belief, the Defendant points to Kathy Newton's testimony to the effect that

only her husband stored clothes and personal effects in the closet and that she only went inside it to put clean laundry in it. The flaw in that argument is that there was no evidence that Totel was aware of those facts when he acceded to Kathy Newton's request to remove the short barrel shotgun from the closet and her house.

U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Supreme Court explained:

> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*Id.* at 300–01, 100 S.Ct. 1682 (footnotes omitted). In *United States v. Murphy*, 107 F.3d 1199, 1204 (6th Cir.1997), the Sixth Circuit noted that a defendant's voluntary statement, made without being questioned or pressured by an interrogator, is admissible at trial, despite the absence of *Miranda* warnings.

The Defendant had the burden of proving, by the preponderance of the evidence, that he made the statements in response to express questioning or its functional equivalent. In *United States v. Lawrence*, 1989 WL 153161 (6th Cir.1989), *cert. denied*, 494 U.S. 1019, 110 S.Ct. 1325, 108 L.Ed.2d 500 (1990), the Sixth Circuit held that when a defendant seeks to suppress his statements on the basis that he was not given *Miranda* warnings, he has the burden of proving by the preponderance of the evidence that he was entitled to those warnings, because he was subjected to a custodial interrogation. *Accord, United States v. Davis*, 792 F.2d 1299, 1309 (5th Cir.), *cert. denied*, 479 U.S. 964, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986); *United States v. Charles*, 738 F.2d 686, 692 (5th Cir.

1984).[9] For reasons which follow, the Court concludes that the Defendant has failed to meet his burden in that regard.

As is indicated above, the Defendant made two statements to Ring regarding the short barrel shotgun, after he had been arrested. During the evidentiary hearing, Ring testified that he did not question or interrogate the Defendant after he had arrested him. In addition, there was no evidence that Totel ever questioned him. The Government argues that the Defendant's statements to Ring cannot be suppressed, because they were spontaneous, rather than being in response to questioning by the officer. The Defendant argues that his statements regarding the short barrel shotgun were not spontaneous, because Ring did not mention either statement in the report which he completed after the August 19, 2002, confrontation with the Defendant, even though the report had a section in which spontaneous statements were to be recorded. Notwithstanding Ring's failure to mention the Defendant's statements in his report, the Court credits the officer's testimony to the effect that he did not question or interrogate the Defendant. Accordingly, the Court concludes that the Defendant has failed to meet his burden of proving that he made his statements to Ring in response to express questioning or its functional equivalent.

Based upon the foregoing, the Court overrules the Defendant's Motion to Suppress Evidence and Statements (Doc. # 11), as it relates to the Defendant's statements to Ring.

In sum, the Court overrules the Defendant's Motion to Suppress Evidence and

---

**9.** Although Defendant argues that the Government had the burden of proving that his statements were not made in response to express questioning or its functional equivalent, he has not cited any authority to support that proposition. Based upon *Lawrence* and the other decisions the Court has cited in the text above, it rejects the Defendant's argument in that regard.

Statements (Doc. #11) in its entirety. Counsel listed below will take note that a telephone conference call will be set on an immediate basis, for the purpose of selecting a new trial date for this prosecution.