# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 26, 2008

Charles R. Fulbruge III
Clerk

No. 06-51685

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

FRANCISCO MENDOZA, JR.

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before KING, DeMOSS, and SOUTHWICK, Circuit Judges.

SOUTHWICK, Circuit Judge:

Francisco Mendoza, Jr. appeals his conviction on four counts of importation and possession of marihuana with intent to distribute. Mendoza challenges the sufficiency of the evidence and the fairness of the prosecutor's closing argument. These arguments provide no basis to disturb the judgment of conviction or the sentence. We affirm.

## I. Facts and Procedural History

In March 2006, the Defendant Mendoza crossed the border from Juarez, Mexico into the United States in a truck driven by his cousin, Maria del Socorro Castaneda-Mendoza ("Castaneda"). Customs and Border Protection (CBP) Officer Aaron Fierro, stationed at the primary inspection area, was the first

agent to encounter the truck. Both occupants sought admission into the United States; Mendoza identified himself as a United States citizen and Castaneda presented a border crossing card. However, Castaneda could not produce registration papers for the vehicle. She explained that Juarez police had taken them away from her husband. Officer Fierro required that the truck undergo a secondary inspection. At trial, Officer Fierro testified that Mendoza did not appear to be nervous during the primary inspection.

CBP Officers Carlos Robles, Jr. and Saul Macias performed the secondary inspection. Officer Robles testified that when the truck entered the secondary inspection area, Castaneda appeared "pale and nervous." Officer Robles explained that "[a]ny person that's going to be checked in the secondary vehicle area, they're going to be ready for that inspection." But Mendoza was "just slouched and leaned over against [the] passenger door." This behavior led Officer Robles to believe that Mendoza was pretending to sleep. On cross-examination, Officer Robles testified that Mendoza did not appear to be nervous during the secondary inspection.

Officer Macias testified that a drug-sniffing dog alerted to the truck's front bumper. An inspection revealed marihuana hidden in the front fender wells. When the dog alerted, Officer Macias observed Mendoza sigh, his whole body slumped, and he "put his head down in disbelief." Officer Macias testified that he had observed the same type of behavior in other suspects when they were "caught with a load" of illegal drugs.

Immigration and Customs Enforcement (ICE) Agent Rafael Martinez was present at the border when Mendoza and Castaneda were detained. After being advised of their relevant constitutional rights, both suspects agreed to speak with Agent Martinez. Agent Martinez recounted their statements during his testimony at Mendoza's trial.

During her interview, Castaneda gave inconsistent accounts of the reasons she was driving Mendoza in this truck. She first told Agent Martinez that her cousin Mendoza had requested a ride to the border and that she had borrowed the truck from her ex-husband. She then changed her story, explaining that she had traveled to Mexico from El Paso, Texas, at Mendoza's request, in order to help him take a vehicle across the border. According to Castaneda, she drove her boyfriend's truck to a point near the border and then walked across the border into Mexico to meet Mendoza. Agent Martinez corroborated this by locating the boyfriend's truck near the place where Castaneda said she had left it. Castaneda said that, upon her arrival in Mexico, Mendoza and another individual asked her to drive the truck across the border because it had Mexican license plates and Mendoza (a United States citizen) would arouse suspicion if he drove the truck. Castaneda said that Mendoza and the other individual gave her a name and told her to tell the border inspectors that the vehicle was registered to that person.

After interviewing Castaneda, Agent Martinez spoke with Mendoza, who also provided inconsistent stories. Mendoza first offered essentially the same story as Castaneda, stating that he had asked Castaneda for a ride to El Paso and that the truck belonged to her ex-husband. Agent Martinez thought the story seemed "rehearsed" and told Mendoza that he did not believe him. At this point, Mendoza said that he would tell the truth if Agent Martinez would tear up his notes from the initial statement. After Agent Martinez tore up the notes, Mendoza stated that Castaneda had asked him to accompany her to El Paso to do some shopping. When asked why he lied initially, Mendoza responded that he thought it would be easy to lie.

In addition to these generally conflicting stories, Agent Martinez also noted certain discrepancies within each story. As part of his first story, Mendoza stated that he made telephone calls from a pay phone in El Paso to a friend in

Juarez, Mexico, for 25 cents per call; but calls could not be placed from those pay phones for less than 50 cents. Mendoza told Agent Martinez that he called a friend on a cell phone and asked for a ride into Mexico; but the purported cell phone number was not in service. Mendoza then stated that he traveled by bus to meet his friend near the border; but the bus route seemed circuitous for Mendoza's purposes. As part of his second story, Mendoza stated that he had driven his own vehicle into Mexico the day before and had stayed with his girlfriend in Juarez; but Mendoza could not supply his girlfriend's telephone number. Mendoza also stated that he left his car with a friend before meeting Castaneda; but he could not provide the friend's last name and could not explain why he would leave his car with a person whose last name he did not know.

Prior to trial, Castaneda pled guilty to conspiracy to import marihuana. She agreed to testify against Mendoza. Castaneda's trial testimony tracked the second story that she told Agent Martinez: she had traveled to Mexico at Mendoza's request in order to help him "cross over a truck." She testified that Mendoza and his friend were both in the truck when she arrived at the meeting place, that Mendoza told her the truck's registration had been confiscated by Mexican officials, and Mendoza told her to lie to the border officers regarding truck ownership. She said that Mendoza went from sitting normally to slouching against the door as the truck crossed the bridge to the border checkpoint, then told her, "I don't know anything," as the officers were removing them from the truck during the secondary inspection. Castaneda told jurors that she understood this to mean that the truck had drugs in it.

Mendoza pled not guilty to the four charges against him; his trial strategy was to contest his knowledge that marihuana was hidden in the truck. Mendoza was convicted by a jury on each of four drug-related counts: conspiracy to import 50 kilograms or more of marihuana and of importation of 50 kilograms or more of marihuana in violation of 21 U.S.C. §§ 952(a), 960(a)(1), & 960(b)(3); and

conspiracy to possess with intent to distribute 50 kilograms or more of marihuana and possession with intent to distribute 50 kilograms or more of marihuana in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C). The district court sentenced Mendoza to a 66-month term of imprisonment and a six-year period of supervised release for each count, but ordered that the sentences be served concurrently. He was also ordered to pay a $1,000 fine. Mendoza's appeal from this conviction is before us today.

## II. Discussion

### A. Sufficiency of evidence

Mendoza argues that the evidence on each charge was insufficient. We will affirm if "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982) (en banc). The evidence and all reasonable inferences drawn from it are to be viewed on appeal in the light most favorable to the government. Id. "In addition, all credibility determinations are made in the light most favorable to the verdict." United States v. Moreno, 185 F.3d 465, 471 (5th Cir. 1999).

"The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." United States v. Ortega Reyna, 148 F.3d 540, 543 (5th Cir. 1998). However, if the evidence "gives equal or nearly equal circumstantial support to a theory of guilt or innocence," the Court should reverse because "under these circumstances a reasonable jury must necessarily entertain a reasonable doubt." United States v. Ramos-Garcia, 184 F.3d 463, 465 (5th Cir. 1999) (citations and some internal quotation marks omitted).

### 1. Element of knowledge

Mendoza was convicted on four charges: conspiracy to import marihuana, importation of marihuana, and two counts of conspiracy to possess the

marihuana with the intent to distribute. We will not detail each element of these offenses because Mendoza challenges solely the sufficiency of evidence regarding knowledge. "The knowledge element in a possession case can rarely be established by direct evidence." Ramos-Garcia, 184 F.3d at 465. "Knowledge can be inferred from control of the vehicle in some cases; however, when the drugs are hidden, control over the vehicle alone is not sufficient to prove knowledge." Id. In a hidden compartment situation, this Court requires other circumstantial evidence "that is suspicious in nature or demonstrates guilty knowledge." United States v. Garza, 990 F.2d 171, 174 (5th Cir. 1993).

2. Evidence offered at trial

The government asserts that the jury's verdict is supported by sufficient circumstantial evidence of Mendoza's guilty knowledge, namely: (1) Castaneda's testimony that Mendoza was in control of the truck when she met him in Mexico and that she only drove the truck at his request; (2) Castaneda's testimony that Mendoza told her to lie to border authorities about the ownership of the vehicle; (3) Mendoza's statement, "I don't know anything," and Castaneda's testimony that she understood that to mean that there were drugs in the truck; (4) Mendoza's feigned sleep during the border crossing; (5) Mendoza's reaction when the drug-sniffing dog alerted to the truck; and (6) Mendoza's inconsistent stories and false statements to border authorities.

Mendoza argues that Castaneda's testimony was unreliable in light of her conflicting stories and false statements at the border. Mendoza also suggests that her nervousness during the border inspection, as contrasted with his calm demeanor, indicates that Castaneda – not Mendoza – knew about the marihuana in the truck. However, these challenges go to the credibility of Castaneda's testimony. The jury was aware of Castaneda's plea agreement with the government and heard testimony regarding her inconsistent stories. The jury is charged with determining whether testimony is credible and, if so, what

weight it should be given. Our review assumes such determinations are made in the light most favorable to the verdict and we will not second-guess the jury's decision on this basis. Evidence consisting entirely of testimony from accomplices or conspirators is sufficient. United States v. Turner, 319 F.3d 716, 721 (5th Cir. 2003).

Mendoza next argues that his sighing and slumping in reaction to the drug-sniffing dog's alert, and his apparent sleeping when the truck was directed to the secondary inspection, were just as indicative of innocence as guilt. However, the jury could reasonably have inferred that this behavior was suspicious. For example, the conversations, other noises and movements from the primary to the secondary inspection sites might be found by jurors to make it unlikely any passenger could be sleeping. Consistently, a CBP officer testified that sleeping (or pretending to sleep) was unusual behavior for a person who has been referred to the secondary inspection area at a border checkpoint. In addition, Mendoza admitted that he initially lied to Agent Martinez. He also provided inconsistent statements regarding his method of traveling to Mexico and his reasons for accompanying Castaneda back into the United States. These types of inconsistent statements "are well-recognized circumstantial evidence of guilty knowledge." United States v. Casilla, 20 F.3d 600, 606 (5th Cir. 1994).

"Upon reviewing this evidence, it is important to note that the sole inquiry is not whether the jury's verdict was ultimately correct but whether the jury made a reasonable decision based upon the evidence introduced at trial." United States v. Pando Franco, 503 F.3d 389, 394 (5th Cir. 2007) (citing United States v. Jaramillo, 42 F.3d 920, 923 (5th Cir. 1995)). Five witnesses testified at trial and these witnesses described Mendoza's suspicious behavior, conflicting stories, and one witness placed him in control of the truck. While the circumstantial evidence against Mendoza may be characterized as something less than overwhelming, it was not insufficient as a matter of law.

B. Prosecutor's closing argument

Mendoza argues that the fairness of his trial was undermined during the government's closing argument, when the prosecutor asked the jury to take note of Mendoza's courtroom demeanor. Mendoza's trial lasted for two days. The defense presented no witnesses. Mendoza was present in the courtroom throughout the trial but never testified.

The challenged section of argument was during the prosecutor's rebuttal. It followed defense counsel's emphasizing in his closing argument that Mendoza had been calm at the border. We set forth the relevant portion of the prosecutor's argument, emphasizing the remarks that Mendoza alleges were improper and prejudicial:

> [Prosecutor]: You can look at different people and decide how they act. You can decide what nervousness is and who would get nervous about what.
>
> One thing you can say is, if I had wanted to appear nervous – if I hide my facial features from you and just close my eyes, you can't tell if I'm darting my eyes back and forth, if I'm not looking at you my carotid artery is not showing. Just by not looking at you allows me to hide my features from you. So feigning sleep is a way to hide nervous behavior.
>
> And the other thing is you sat here for two days, and you've gotten to look at the defendant. If you were in his seat, would you be as calm as he has been for the last two days?
>
> [Defense Counsel]: Your honor, may we approach? He's testifying.
>
> [Court]: I'll overrule the objection. You may proceed.
>
> [Prosecutor]: Ladies and gentlemen of the jury, I want to make sure I'm clear about it. You have an inalienable right not to testify against yourself. And I certainly want to make it clear – it's in the jury charge, and it's one of your constitutional rights. He has an absolute right not to testify.

> But you are allowed to look at him sitting there. You are allowed to look at his demeanor, and that's all I'm asking you to do.

Defense counsel objected at the prosecutor's first mention of Mendoza's demeanor. This objection was overruled and the district court did not give any instructions to the jury regarding these particular remarks.

Mendoza does not argue that the remarks constituted a comment on his failure to testify. A prosecutor's comment on a defendant's "expressionless courtroom demeanor" has been found not to be equivalent to a comment on his failure to take the stand. Bishop v. Wainwright, 511 F.2d 664, 668 & n.5 (5th Cir. 1975). Instead, Mendoza argues that the comment violated his right to "have his guilt or innocence determined solely on the basis of evidence introduced at trial, and not on grounds . . . not adduced as proof at trial." Taylor v. Kentucky, 436 U.S. 478, 485 (1978).

1. Propriety of commenting on a defendant's non-testimonial demeanor

"Improper comments by a prosecutor may constitute reversible error where the defendant's right to a fair trial is substantially affected." United States v. Andrews, 22 F.3d 1328, 1341 (5th Cir. 1994). Appellate review of claims that a prosecutor made an improper argument occurs in two steps. We first analyze whether the prosecutor's remark was legally improper. United States v. Morganfield, 501 F.3d 453, 467 (5th Cir. 2007). If it was, we turn to whether the remark "prejudiced the defendant's substantive rights." Id. (quoting United States v. Insaulgarat, 378 F.3d 456, 461 (5th Cir. 2004)). We take that first step now, then evaluate the effect of the error in the next section.

A prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence. "A prosecutor may not directly refer to or even allude to evidence that was not adduced at trial." United States v. Murrah, 888 F.2d 24, 26 (5th Cir. 1989). "The sole purpose of closing argument is to assist the jury

in analyzing, evaluating and applying the evidence." United States v. Dorr, 636 F.2d 117, 120 (5th Cir. Unit A Feb. 1981).

The precedents that we have discovered from other circuits agree that courtroom demeanor of a non-testifying criminal defendant is an improper subject for comment by a prosecuting attorney.[1] Of course, it is inevitable that jurors will observe a defendant at counsel table during the course of a trial. Some jurors may form opinions from these observations regardless of instructions given them by the court.[2] This is a natural consequence of a defendant's decision to exercise his right to be present at trial. See Faretta v. California, 422 U.S. 806, 819 n.15 (1975). But the prosecutor may not elevate these opinions that may arise with "no help from the court" to the status of evidence which jurors should consider during their deliberations. United States v. Wright, 489 F.2d 1181, 1186 (D.C. Cir. 1973).

Mendoza did not testify. His courtroom demeanor was not "in any sense legally relevant to the question of his guilt or innocence of the crime charged." Id. The prosecutor's comments were error.

2. Effect of error

(a) Standard of review

When a prosecutor's improper remarks are claimed by a defendant to have prejudiced his right to a fair trial, we have used a few different articulations of our appellate role in reviewing the error. Regardless of the precise language, the

---

[1] United States v. Schuler, 813 F.2d 978, 980-82 (9th Cir. 1987); United States v. Pearson, 746 F.2d 787, 796 (11th Cir. 1984); United States v. Carroll, 678 F.2d 1208, 1209-10 (4th Cir. 1982); United States v. Wright, 489 F.2d 1181, 1186 (D.C. Cir. 1973). Without explicitly so holding, these circuits have implied that such comments are error: Gomez v. Ahitow, 29 F.3d 1128, 1136-37 (7th Cir. 1994); United States v. Gatto, 995 F.2d 449, 455-56 (3d Cir. 1993); Borodine v. Douzanis, 592 F.2d 1202, 1210-11 (1st Cir. 1979).

[2] One dissenting judge argued that a jury's consideration of an accused's demeanor and conduct at counsel's table was proper evidence. Schuler, 813 F.2d at 983 (Hall, J., dissenting). We disagree with that judge's conclusion but refer to her analysis for its recognition of the inevitability of jurors' noticing courtroom demeanor and actions.

goal is to determine if there is a meaningful risk that the verdict was improperly affected by those remarks.

At times, we have distinguished review of prosecutorial misconduct under our broad supervisory power over the trials conducted in federal district courts, from our more circumscribed review authority over petitions for post-conviction relief, which is limited to due process violations. E.g., Derden v. McNeel, 978 F.2d 1453, 1460 (5th Cir. 1992). This distinction explains some – but not all – of the different standards of inquiry stated in opinions.

When prosecutor misconduct is reviewed on direct appeal from a criminal trial, one of the earliest statements of the present test for reversal is this:

> As the Supreme Court observed nearly a half century ago, the prosecutor "may prosecute with earnestness and vigor-indeed, he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones." Berger v. United States, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 2d 1314 (1935). To determine whether the prosecutor violated this rule, the reviewing court "must weigh the degree to which the alleged improper argument may have affected the substantial rights of the defendants." United States v. Rhoden, 453 F.2d 598, 600 (5th Cir. 1972). Pertinent factors include: (1) the magnitude of the prejudicial effect of the statements, (2) the efficacy of any cautionary instructions, and (3) the strength of the evidence of defendant's guilt. Id.

United States v. McPhee, 731 F.2d 1150, 1152 (5th Cir. 1984). A more recent statement of the three factors appears in United States v. Virgen-Moreno, 265 F.3d 276, 290-91 (5th Cir. 2001). It is the standard we apply to this appeal.

We do not view the prosecutor's remarks in isolation but consider the effect of those remarks in the context of the entire trial. Id. Underlying our considerations is that a "criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." Andrews, 22 F.3d at 1341.

The government initially argues that defense counsel's objection was insufficient to preserve the error for this Court's review. Mendoza's counsel

stated simply that the prosecutor was testifying. The trial court was thereby presented with a valid objection that the prosecutor was bringing before the jurors a matter that had not been introduced as evidence, which no juror may have observed, and which reflected the prosecutor's opinion derived either from his observations or simply his desire to persuade. We conclude that the objection to the prosecutor's remarks was sufficient to preserve the error for review.

Though the error was preserved, Mendoza still bears the "substantial burden" of establishing that the error warrants reversal of his conviction. Virgen-Moreno, 265 F.3d at 290. "The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." Id. (quoting United States v. Iredia, 866 F.2d 114, 117 (5th Cir. 1989)).

The dissent characterizes the error as one violating a due process right to have jurors base their verdict solely on the evidence introduced at trial. The dissent would treat the prosecutor's remarks as a violation of the due process protections of the Fifth Amendment, akin to a remark regarding the defendant's post-arrest silence or request for counsel. E.g., United States v. Moreno, 185 F.3d 465, 472-73 (5th Cir. 1999). When analyzing whether constitutional error requires reversal, we ask "whether the error was harmless beyond a reasonable doubt." Id.; see Chapman v. California, 386 U.S. 18, 21-24 (1967).[3]

The dissent's view that a due process violation occurred arises from language in Taylor v. Kentucky, 436 U.S. 478, 485 (1978). In Taylor, the Supreme Court considered whether the due process clause of the Fourteenth Amendment required a "presumption of innocence" instruction if requested by the accused. 436 U.S. at 479. In the course of its analysis, the Court remarked

---

[3] Although Mendoza quotes from the Supreme Court's decision in Taylor v. Kentucky, he never argues that this case should be reviewed under the "harmless beyond a reasonable doubt" constitutional error standard. To the contrary, Mendoza argues that the proper standard for reviewing the remarks is the one we are following – whether serious doubt was cast on the correctness of the verdict due to the error.

12

that "one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." Id. at 485 (citing Estelle v. Williams, 425 U.S. 501 (1976)). The cited precedent held that an accused cannot be compelled to stand trial in prison clothing. Williams, 425 U.S. at 503-06.

These precedents were concerned that even when law enforcement officers and the prosecution found sufficient justifications for arrest and a trial for the charged offenses, the presumption of innocence was the necessary starting position for jurors. See Taylor, 436 U.S. at 484-85; Williams, 425 U.S. at 504. Governmental views about guilt are reflected in arrest, indictment, and even in a person's being issued prisoner clothing. It is the trial court's function to ensure that jurors do not use those events and symbols as evidence. Taylor and Williams do not transform any reference to matters not in evidence into a Fifth Amendment violation. Consistently, this Court has reviewed a prosecutor's reference to facts not in the record under the non-constitutional error standard that we apply today. E.g., United States v. Davis, 792 F.2d 1299, 1306-08 (5th Cir. 1986). We find no precedent in which the harmless beyond a reasonable doubt standard was applied to this kind of closing argument error.

This is not a case in which "the [Government] has denied a defendant the benefit of a specific provision of the Bill of Rights, such as the right to counsel, or in which the prosecutor's remarks so prejudiced a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (citation omitted). One point at which caselaw concerning constitutional error intersects with the caselaw about review of improper closing arguments is when the prosecutor's remarks have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id. at 643. Under the Donnelly test of

pervading unfairness, an improper comment may become constitutional error, but it is only the exceptional case in which that will occur.

(b) Analysis of prejudice

We now undertake the analysis necessary to determine if there was prejudicial error. Mendoza's jury was not instructed to disregard the comment on his courtroom demeanor. Instead, the trial court's overruling the objection invited consideration of demeanor. Therefore, the strength of the inculpatory evidence and the possible prejudice from the argument must be evaluated without the ameliorating effect of a corrective from the court. Seriousness of the error and strength of the inculpatory evidence are interrelated when we evaluate if reversal is required. Depending on the weakness of the incriminating evidence, relatively mild but erroneous comments can be reversible error, but a case containing overwhelming evidence of guilt would be little affected by much more egregious error in argument.

After the objection in the present case was overruled, the prosecutor informed jurors that they were "allowed to look at him sitting there." That comment was certainly true and even unobjectionable in isolation – there is no courtroom requirement that jurors avert their eyes from those not on the witness stand. In context, though, the comment was an invitation for jurors to weigh as evidence the calmness of the defendant at the counsel's table.

Perceiving substantial prejudice from the prosecutor's argument, Mendoza directs us to a Ninth Circuit decision that reversed a conviction solely due to the prosecutor's improper reference to the defendant's courtroom demeanor in closing argument. United States v. Schuler, 813 F.2d 978, 983-84 (9th Cir. 1987). The Schuler prosecutor made the following remark:

> [W]hile Mr. Schuler was being interrogated by the two security agents, Schuler made a number of racial comments about the number of people he was going to kill, a number of sexual comments. I noticed a number of you were looking at Mr. Schuler

14

> while that testimony was coming in and a number of you saw him laugh and saw him laugh as they were repeated.

Id. at 979. The court characterized the prosecutor's comments as "suggesting to the jury that Schuler's laughter was relevant apparently for the purpose of showing that he was of bad character because he considered the charges of threatening the life of the President to be a joke." Id. at 980 (citing FED. R. EVID. 404(a)). The court concluded that "such comments in the absence of a curative instruction, constitute a deprivation of the right to a fair trial." Id. at 981.

Mendoza also argues that one of this Court's decisions supports a reversal of his conviction. United States v. Wicker, 933 F.2d 284 (5th Cir. 1991). In Wicker, the prosecutor alleged during closing argument that the defendant had laughed at testimony regarding his involvement in a bank fraud scheme. Id. at 290-91. Then-Chief Judge Clark, writing for the Court, discussed Schuler but refused to reverse Wicker's conviction. There had been no objection to the remark at trial, which left the heavier appellate burden of plain error review; the harmful effect of the remark was lessened when the district court gave a sua sponte curative instruction. Id. at 291.

Mendoza argues that because he did object and did not receive a curative instruction, a reversal is warranted under both Wicker and Schuler.

Weighing against reversal is that the remarks here were isolated and non-inflammatory. They comprised only a small portion of what was said to be a twenty-minute closing argument that covers fourteen transcript pages. Though defense counsel's objection was overruled, the prosecutor did not dwell on Mendoza's courtroom demeanor. We have quoted every reference to the point. Mendoza's alleged calmness in the courtroom was not mentioned before or after this one incident. Generally, an improper argument that is isolated does not warrant reversal of a criminal conviction. Hitt, 473 F.3d at 161-62.

The government also suggests that the remarks were not inflammatory because they touched upon an "arguably irrelevant" matter – Mendoza's calmness in the courtroom. Cf. United States v. Harms, 442 F.3d 367, 378 (5th Cir. 2006) (defendant could not show that prosecutor's comment "on an essentially irrelevant matter" substantially prejudiced his rights). However, Mendoza's defense strategy included contrasting his calmness at the border with Castaneda's nervousness. In fact, the prosecutor's remarks followed a closing argument by defense counsel that stressed Mendoza's calmness during the border inspection. Neither trial counsel appeared to consider Mendoza's ability to remain calm during stressful situations irrelevant during closing arguments.

It is also of some importance that these remarks did not characterize Mendoza in a demeaning way in an effort to convince jurors of his bad character. For example, the remarks did not suggest that Mendoza was heartless or without remorse. We have found only one federal circuit court opinion that reversed a conviction based solely on the prosecutor's remarks regarding the defendant's courtroom demeanor. See Schuler, 813 F.2d at 981.[4] In Schuler, the prosecutor risked inflaming jurors by implying that the defendant's laughter was indicative of a lack of remorse for the harm he had caused. In the same way that "bad character" evidence is closely controlled by the evidentiary rules, efforts to inflame jurors through argument that characterizes a defendant in the most despicable manner will be seen as creating a high risk of prejudice. Federal Rule of Evidence 404(a) excludes proof of bad character "not because it has no

---

[4] The other cases addressing such remarks found that the cumulative effect of several harmful errors warranted reversal, see Pearson, 746 F.2d at 796; Wright, 489 F.2d at 1187-95, or the prosecutor's comments were so egregious that multiple constitutional rights of the defendant had been impugned. See Carroll, 678 F.2d at 1209-10 (finding that prosecutor's comments regarding defendant's in-court consultation with his attorney violated Fifth Amendment rights not to testify and not to be convicted except on the basis of properly admitted evidence, and Sixth Amendment rights to counsel and jury trial).

probative value, but because it sometimes may lead a jury to convict the accused on the ground of bad character deserving punishment irrespective of guilt." United States v. Anderson, 933 F.2d 1261, 1268 (5th Cir. 1991). Unlike the inflammatory remarks regarding laughter, the prosecutor's passing remarks regarding Mendoza's demeanor would not seemingly evoke guilty-because-of-bad-character reasoning by jurors. This distinction does not make the comments here any less erroneous, but it may make them less harmful.

We have just described our analysis of the kind of prejudice that has caused, or not, reversal in the controlling precedents. "Reversal and remand is the most effective sanction for prosecutorial misconduct," but we are not free to employ that sanction in every case. United States v. Jones, 839 F.2d 1041, 1049 (5th Cir. 1988). Reversal due to prosecutorial remarks does not flow inexorably from a determination of error. Even where remarks may be categorized as "reprehensible," id., or "clearly inappropriate," United States v. Lowenberg, 853 F.2d 295, 301 (5th Cir. 1988), we must still consider their legal impact. Our power to reverse a criminal conviction for prosecutorial misconduct "does not permit us to ignore the actual effect of the error." Jones, 839 F.2d at 1050.

The remarks in Mendoza's trial were not inflammatory. By calling on jurors to recall the defendant's calmness, the argument did not incite jurors against Mendoza. The argument essentially was that Mendoza responded to the stress of being tried for this serious crime, to being stopped at the border, and perhaps to any other stressful situation with surprising calmness. Unless jurors thereby believed that Mendoza's calm courtroom demeanor proved he was calm only when he was guilty and acted otherwise when he was innocent – and that essentially silly point was not argued – at best the prosecutor revealed that Mendoza was able either to be calm or feign calmness when useful.

As we noted before, the multi-part evaluation of an erroneous closing argument – the magnitude of any prejudice, the likely effect of any cautionary

instruction, and the strength of the evidence – is to help us answer the central question of whether the "prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." Iredia, 866 F.2d at 117 (for non-constitutional error). The prejudice from improper closing argument has to be evaluated in the context of the entire trial. Virgen-Moreno, 265 F.3d at 290-91.

Applying those rules, we conclude that the prosecutor's argument did not invite jurors to accept that Mendoza's calmness at the border before the drugs were discovered was indicative of guilt. At worst, the prosecutor's flawed effort encouraged jurors to believe that Mendoza's serial calmness was not proof of either guilt or innocence. If the argument caused that belief, then the prosecutor's improper remarks undercut the defense argument that Mendoza's border calmness was suggestive of obliviousness to the presence of drugs. However, there was substantial actual evidence that also rebutted that defense argument. There was strong circumstantial evidence of Mendoza's guilty knowledge, including the testimony of three border officers who observed Mendoza's apparently feigned sleeping, and of one officer to whom Mendoza admittedly lied. There was substantial evidence from Castaneda's testimony that Mendoza made the arrangements to get this truck, which was found to be drug-laden, across the border; that he told her to lie about ownership; and that he told Castaneda as they were being removed from the truck that "I don't know anything." Jurors may well have found her testimony particularly damning.

For similar reasons, we conclude that the error did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643. The difference between the due process standard and one that considers the seriousness of doubt about the correctness of the jury's verdict, may be disputed. Regardless, when we measure the error with the Donnelly ruler, we again conclude we should affirm.

In summary, the prosecutor's remarks were improper. They sought to focus the jury's attention on information that was not evidence. The remarks drew an objection; the district court should have sought to cure any harm that might have been caused. Of course, we cannot actually know what jurors made of the argument, as the dissent notes. That is always the difficulty in evaluating error for its potential to cause prejudice. Nonetheless, controlling caselaw requires that we undertake this analysis and not just reverse because error occurred. Even for constitutional error, the Supreme Court instructs us that reversal is not required if the violation was harmless error in the context of the entire trial. Arizona v. Fulminante, 499 U.S. 279, 306-08 (1991).

We conclude that the prosecutor's isolated remarks did not violate any constitutional rights. The remarks were error, but of less than constitutional dimension. It is difficult for us to perceive that the argument had much impact at all. Jurors would not likely have found Mendoza's demeanor at trial to be probative of anything. These remarks do not cast serious doubt on the verdict, which was "obtained in an otherwise fair proceeding." United States v. Young, 470 U.S. 1, 11 (1985).

We conclude that Mendoza was convicted based on admissible evidence in a trial that was imperfect but in which the imperfections were harmless.

The judgment of conviction is AFFIRMED.

DeMOSS, Circuit Judge, dissenting:

Mendoza was convicted because the jury determined that he had guilty knowledge of the marihuana hidden in the fenders of the pickup truck driven by Castaneda. At trial, the Government argued that Mendoza's calm demeanor at the border was circumstantial evidence of his guilty knowledge.[1]

In my opinion, the prosecutor's comments during closing arguments comparing Mendoza's calm demeanor at the border with his calm demeanor in the courtroom violated Mendoza's Fifth Amendment due process right to have his guilt or innocence determined solely on the basis of the evidence introduced at trial.[2] Mendoza preserved this error, the district court improperly overruled his objection, and the district court did not give a cautionary instruction to the jury. After this objection was overruled, the prosecutor reiterated that the jury

---

[1] At trial, the Government's witnesses testified that (1) Mendoza did not appear to be nervous during the primary inspection, (2) he appeared to feign sleep when the pickup truck entered the secondary inspection area, and (3) he did not appear to be nervous during the secondary inspection (until a drug-sniffing dog alerted to the front bumper).

[2] See Taylor v. Kentucky, 436 U.S. 478, 486 (1978) (referring to "the accused's constitutional right to be judged solely on the basis of proof adduced at trial") (emphasis added); see United States v. Schuler, 813 F.2d 978, 981 (9th Cir. 1987) ("We agree . . . that [the prosecutor's] comments in the absence of a curative instruction, constitute a deprivation of the fifth amendment right to a fair trial.") (emphasis added); see United States v. Carroll, 678 F.2d 1208, 1209-10 (4th Cir. 1982) ("It is clear that the prosecutor's reference to the courtroom behavior of the defendant was improper . . . . He also had a Fifth Amendment right not to be convicted except on the basis of evidence adduced against him . . . . When, as here, the prosecutor describes the courtroom behavior of a defendant who has not testified, and then goes on to tell the jury that it may consider that behavior as evidence of guilt, the prosecutor violates those rights.") (emphasis added); see United States v. Gatto, 995 F.2d 449, 455 (3d Cir. 1993) ("When . . . the prosecutor comments in closing on defendant's courtroom conduct without any supporting evidence in the record, the defendant's Fifth Amendment due process rights to a fair trial and to be judged solely on the basis of evidence admitted at trial are violated.") (emphasis added); see Gomez v. Ahitow, 29 F.3d 1128, 1136 (7th Cir. 1994) ("The prosecution may not, consistent with a defendant's due process rights . . ., seek to obtain a conviction by going beyond the evidence before the jury.") (internal quotation marks omitted) (emphasis added).

should consider Mendoza's calm demeanor in the courtroom as evidence against him.[3]

## I.

I believe that these comments prejudiced Mendoza's substantive rights because the prosecutor's improper comments related to the most contested issue in the trial—Mendoza's guilty knowledge of the hidden marihuana. Because the prejudicial effect of these comments was compounded by the absence of a cautionary instruction and the "less than overwhelming" evidence of guilty knowledge, I must respectfully dissent from the majority's refusal to reverse Mendoza's conviction and remand for a new trial. See United States v. Virgen-Moreno, 265 F.3d 276, 290-91 (5th Cir. 2001).

## II.

During closing argument, the prosecutor improperly compared Mendoza's calm demeanor at the border with his calm demeanor in the courtroom in an effort to bolster the Government's argument and discredit the defense's argument regarding Mendoza's guilty knowledge.

The majority postulates that "[a]t best, the prosecutor's flawed effort encouraged a belief that Mendoza's serial calmness was not proof of either guilt or innocence." I believe that the prosecutor's comments suggest that Mendoza acts calm in order to hide his guilt or nervousness. Alternatively, the prosecutor's comments might suggest that Mendoza is always calm, so his calm

---

[3] Mendoza does not argue that the prosecutor's comments were a comment on his failure to testify. Although a prosecutor's comment on a defendant's "expressionless courtroom demeanor" is usually not a comment on his failure to take the stand, see Bishop v. Wainwright, 511 F.2d 664, 668 & n.5 (5th Cir. 1975), it might be depending upon the content and context of the statement. See Schuler, 813 F.2d at 981-82. In this case, I do not think the prosecutor's comment was a comment on Mendoza's failure to take the stand because the prosecutor's "manifest intent" was to argue that Mendoza's calmness in the courtroom was probative of his guilty knowledge of the hidden marijuana. See United States v. Grosz, 76 F.3d 1318, 1326 (5th Cir. 1996). The jurors would not construe the prosecutor's comments on Mendoza's calmness in the courtroom as referring to his failure to testify. See Bishop, 511 F.2d at 668.

demeanor at the border is not probative of his innocence, contrary to the argument of the defense. Reasonable jurors could have interpreted the prosecutor's comments either way; however, both arguments rely upon inadmissible evidence to rebut a legitimate defensive theory, based on admissible evidence, that was raised by Mendoza during his closing argument. Regardless of the exact interpretation adopted by the jurors, we should not assume the best-case scenario in our prejudice analysis. If Mendoza's calm demeanor in the courtroom was irrelevant to his guilt, or inconclusive, then the prosecutor would not have made the argument and then repeated it after Mendoza's objection was overruled.

"A prosecutor may not directly refer to or even allude to evidence that was not adduced at trial." United States v. Murrah, 888 F.2d 24, 26 (5th Cir. 1989). During closing arguments, Mendoza argued that his calm demeanor at the border was indicative of lack of guilty knowledge when viewed in context with Castaneda's nervous demeanor at the border. In my opinion, Mendoza's right to a fair trial was substantially affected when the prosecutor argued that Mendoza's calm demeanor at the border was indicative of guilty knowledge when viewed in context with Mendoza's calm demeanor in the courtroom. The prosecutor wrongfully attempted to neutralize the persuasive value of Mendoza's admissible comparison evidence—Castaneda's nervous demeanor at the border—with inadmissible comparison evidence—Mendoza's calm demeanor in the courtroom.

III.

Because the Government carries the burden of proof regarding the knowledge element, I believe the prosecutor's improper comments constituted reversible error. In order to obtain a conviction, the Government was required to produce evidence that was sufficient to prove the knowledge element beyond a reasonable doubt. See United States v. Ortega Reyna, 148 F.3d 540, 544 (5th

Cir. 1998). Because we don't know what circumstantial evidence the jurors relied upon in arriving at their conclusions regarding the knowledge element, see United States v. Garza, 990 F.2d 171, 174 (5th Cir. 1993), I believe the prosecutor's comments cast "serious doubt on the correctness of the jury's verdict." See Virgen-Moreno, 265 F.3d at 290. The majority implies that other circumstantial evidence of guilty knowledge was sufficient to convict, yet it readily concedes that "we cannot actually know what the jurors made of the [prosecutor's improper] argument." The majority hypothesizes that the improper argument did not have much impact at all. Unfortunately, my crystal ball does not work as well as theirs.

IV.

I disagree with the majority's attempt to distinguish United States v. Schuler by noting that the prosecutor's improper comments were not related to Mendoza's bad character and were not inflammatory. The majority is correct in arguing that bad character evidence is inherently inflammatory and creates a high risk of prejudice. See United States v. Anderson, 933 F.2d 1261, 1268 (5th Cir. 1991); FED. R. EVID. 404(a). Nevertheless, the prosecutor's improper comments in this case also created a high risk of prejudice because they related to the most contested issue in the trial—Mendoza's guilty knowledge of the hidden marihuana. Although the prosecutor's improper comments did not suggest that Mendoza was "heartless or without remorse," they did suggest that he was guilty of the crimes charged.

In my mind, it is irrelevant that the prosecutor's improper comments related to Mendoza's guilty knowledge of the hidden marihuana instead of his bad character. Our prejudice analysis must focus on the risk that the improper comments resulted in a wrongful conviction, not on the unsavory nature of those comments standing alone. Although the prosecutor's improper comments probably would not evoke "guilty-because-of-bad-character" reasoning by the

23

jurors, they could easily have evoked "guilty-because-of-calm-demeanor" reasoning.  The Due Process Clause of the Fifth Amendment prohibits the prosecutor from referring to any evidence that was not introduced at trial, regardless of whether that evidence relates to bad character or guilty knowledge.  See Carroll, 678 F.2d at 1209 (where the prosecutor's improper comments related to the defendant's discussion of bank surveillance photographs with his trial counsel, not his bad character).

V.

According to the majority, an improper comment that is "isolated" does not usually warrant reversal of a criminal conviction.  See United States v. Hitt, 473 F.3d 146, 161-62 (5th Cir. 2006).  Although the majority characterizes the prosecutor's improper comments as isolated statements contained within a twenty-minute closing argument, the prejudicial effect of those comments is magnified when one considers the prominent role that guilty knowledge played "in the context of the entire trial."  See Virgen-Moreno, 265 F.3d at 290.

VI.

Demeanor evidence in drug possession cases has a protean quality and dubious probative value.  Indeed, we have previously recognized that "the character of a defendant's reaction to scrutiny at the border is a double-edged sword for the defendant." United States v. Ramos-Garcia, 184 F.3d 463, 466 (5th Cir. 1999).  We have stated that nervous demeanor can indicate guilty knowledge, see United States v. Olivier-Becerril, 861 F.2d 424, 427 (5th Cir. 1988), calm demeanor can indicate guilty knowledge, see United States v. Resio-Trejo, 45 F.3d 907, 913 (5th Cir. 1995), nervous demeanor is a normal reaction to unusual circumstances and does not necessarily derive from an underlying consciousness of criminal behavior, see United States v. Williams-Hendricks, 805 F.2d 496, 500 (5th Cir. 1986), and calm demeanor can provide equal circumstantial support for a finding of guilt or innocence, see Ortega Reyna, 148

F.3d at 544. The only way to reconcile these conflicting statements is to conclude that demeanor evidence is inconclusive unless viewed in the context of other admissible circumstantial evidence indicating guilty knowledge. See Ramos-Garcia, 184 F.3d at 466-67.

The prosecutor's improper comments in this case exacerbated the pre-existing problems associated with demeanor evidence by insinuating that Mendoza's calmness in the courtroom made his calmness at the border more probative of guilty knowledge. The Government attempted to bolster its admissible but weak circumstantial evidence of guilt with inadmissible and irrelevant evidence. I agree with the majority that Mendoza's courtroom demeanor was not "in any sense legally relevant to the question of his guilt or innocence of the crime charged." United States v. Wright, 489 F.2d 1181, 1186 (D.C. Cir. 1973).

In this case, we don't know whether admissible or inadmissible evidence tipped the balance in favor of the Government and led the jury to conclude that Mendoza's calm demeanor was indicative of guilty knowledge. Although the majority optimistically speculates that the jury did not seriously consider the inadmissible evidence, our standard of review requires us to evaluate whether the improper comments "cast serious doubt on the correctness of the jury's verdict," not whether they conclusively undermined that verdict. See United States v. Iredia, 866 F.2d 114, 117 (5th Cir. 1989). In my opinion, Mendoza successfully carried the substantial burden of establishing that this error warrants reversal of his conviction. See Virgen-Moreno, 265 F.3d at 290.

VII.

The majority criticizes me for characterizing the prosecutor's improper comments as constitutional error and for not applying the Chapman standard of review: whether the constitutional error was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 24 (1967). Schuler, Carroll,

Gatto, and Ahitow all explicitly state that this error is constitutional. Furthermore, Schuler and Carroll applied a constitutional error standard of review. See Schuler, 813 F.2d at 982 (applying the Chapman standard); see Carroll, 678 F.2d at 1210 (applying the Fahy standard, which was the predecessor to the Chapman standard). I discuss the Virgen-Moreno standard in my dissent because I believe the error is reversible regardless of whether the error is constitutional.

Although I believe that the prohibition on referring to evidence that was not adduced at trial has constitutional origins, some cases indicate that the prohibition is simply an exercise of the appellate court's "supervisory powers over federal trials" on direct review. See Borodine v. Douzanis, 592 F.2d 1202, 1211 n.6 (1st Cir. 1979); see also Berger v. United States, 295 U.S. 78, 84-85, 89 (1935); United States v. Hasting, 461 U.S. 499, 505 (1983); Willie v. Maggio, 737 F.2d 1372, 1390 (5th Cir. 1984). Two cases cited by the majority state that the prosecutor's comments were error without referring to the Constitution. See United States v. Pearson, 746 F.2d 787, 796 (11th Cir. 1984); see United States v. Wright, 489 F.2d 1181, 1186 (D.C. Cir. 1973). For our part, we have been less than clear regarding where this prohibition originated, see, e.g., Murrah, 888 F.2d at 26, and we have previously relied on Virgen-Moreno's non-constitutional error standard when reviewing the prosecutor's comments on facts not in evidence. See, e.g., United States v. Davis, 792 F.2d 1299, 1306-08 (5th Cir. 1986).

Unlike a prosecutor's comment on the defendant's failure to testify, which is a violation of the Self-Incrimination Clause of the Fifth Amendment, see Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974), a prosecutor's comment on facts not in evidence would fall within the category of a "generic due process violation," see Rogers v. Lynaugh, 848 F.2d 606, 608 (5th Cir. 1988), such that

26

there is no constitutional error unless the "prosecutor's comments so infected the trial with unfairness as to make the resulting conviction . . . a denial of due process." Id. (internal quotation marks omitted). In this circuit, "[t]he test applied to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted." Id. at 609 (internal quotation marks omitted). In the context of prosecutorial misconduct, the error is constitutional "if the prosecutor's remarks evince either persistent and pronounced misconduct or the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." Id. at 609 n.7 (internal quotation marks omitted).

I do not believe that every comment on facts not in evidence is constitutional error; Schuler and Carroll clearly focused on the content and context of the improper statement. See Kirkpatrick v. Blackburn, 777 F.2d 272, 280 (5th Cir. 1985) (noting that it is less difficult for a defendant to show that a trial error prejudiced his substantial rights than to show that the error abridged his constitutional rights by rendering his trial fundamentally unfair). However, based on the important role that demeanor evidence played in Mendoza's trial, I believe that there is a reasonable probability that the verdict might have been different in the absence of the prosecutor's comment and that this constitutional error requires reversal.[4] Compare Guidroz v. Lynaugh, 852 F.2d 832, 838 (5th Cir. 1988), with Virgen-Moreno, 265 F.3d at 291 (both standards require consideration of the strength of the evidence supporting the conviction). The

---

[4] Because the defendant must show the harmfulness of the error to establish a constitutional error, subsequent application of the Chapman harmless error test is "superfluous" because "the error obviously could not then be shown to be harmless." Kirkpatrick, 777 F.2d at 280.

27

prosecutor's comments, "in the context of the entire trial, were sufficiently prejudicial to violate [Mendoza's] due process rights." Donnelly, 416 U.S. at 639.

## VIII.

"This court has passed too many times on this kind of comment by prosecutors to permit it to continue by allowing it to be brushed under the rug under the harmless error doctrine." United States v. Corona, 551 F.2d 1386, 1389 (5th Cir. 1977). "It is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." Berger, 295 U.S. at 88. I believe the prosecutor's comments violated Mendoza's Fifth Amendment due process right to have his guilt or innocence determined solely on the basis of the evidence introduced at trial. Mendoza properly preserved this error, and the district court failed to give the requisite cautionary instruction. See Carroll, 678 F.2d at 1210 ("By allowing the prosecutor's remarks to pass uncorrected, over defense counsel's objection, . . . the district court implied that the remarks were unobjectionable."). Fairness and justice require reversal and remand. For these reasons, I respectfully dissent.