# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 7, 2012

Lyle W. Cayce
Clerk

No. 11-50808
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

AURELIA OCHOA HERNANDEZ, also known as Rachel Tovar, also known as
Aurelia Hernandez; PEDRO DANIEL TOVAR,

Defendants-Appellants

Appeals from the United States District Court
for the Western District of Texas
USDC No. 1:11-CR-131-2

Before WIENER, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Defendants-Appellants Aurelia Ochoa Hernandez, Pedro Daniel Tovar, and 19 others were named in a 47-count indictment. Hernandez was named in all 47 counts, consisting of conspiracy to make false statements in connection with firearms sales, export firearms contrary to law, and conceal firearms prior to exportation (Count 1); smuggling firearms (Count 2); making false statements in firearms records and aiding and abetting (Counts 3-44); being a felon in

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50808

possession of a firearm (Count 45); conspiracy to commit money laundering (Count 46); and money laundering (Count 47). Tovar was named in five counts: Count 1, Count 2, and three counts of making false statements in firearms records and aiding and abetting (Counts 20, 38, and 39). The indictment alleged that Hernandez and Tovar participated in a conspiracy to acquire firearms in Texas through the use of straw purchasers and then transport the firearms to Mexico in exchange for cash.

Following a jury trial, Hernandez and Tovar were found guilty as charged. Hernandez was sentenced to a total of 360 months of imprisonment, and Tovar was sentenced to a total of 97 months of imprisonment. Hernandez challenges her convictions, and Tovar challenges his sentences.

*Aurelia Ochoa Hernandez*

Hernandez first argues that two remarks during the government's closing argument amounted to prosecutorial misconduct. The first occurred while one of the prosecutors was arguing that the jury should infer that Hernandez had transported the firearms involved into Mexico. The prosecutor stated,

> So how do we know that Aurelia Hernandez was in charge of transportation? How do we know that she was the one taking the firearms to Charlie? Well, I will present to you that there are lots of ways. There's been lots of evidence to show that she's the one to do it. And I think one of the best pieces of evidence is one that's more of an inference. You saw that we found this gun, and we found three others. Four semi-autos were found. *And, trust me, the ATF, they looked for them.* You heard about at least two search warrants they did. We found four.
>
> And the indictment—the indictment has a lot listed in it, at least about 50. And Joey Lira told you he thought it was up to 60 or 62. Where are those other guns? They're in Mexico. That's why we couldn't find them. They're with Charlie, or Charlie has already passed them on to somebody else. And how did they get there? (Emphasis added.)

2

No. 11-50808

Hernandez contends that the prosecutor's statement, "Trust me, the ATF, they looked for them," constituted improper bolstering of the evidence by the government through a personal statement.  Hernandez also argues that the use of the word "trust" was particularly prejudicial because "trust" appears on United States currency and thus even more directly invoked the imprimatur of the sovereignty of the United States.

The second remark was made by the other prosecutor during the government's rebuttal to the defendants' closing arguments.  In expounding on how Hernandez was able to cross the border into Mexico with firearms without being detected, the prosecutor stated,

> How did she get across the border with these guns?  I mean, *I guess it's not in the record*, but it's obvious to all of us.  This woman is in her 50s.  Take a look at her.  Would you think she's carting around semiautomatic assault rifles?[]  Let's complete the picture.  How about in a pickup truck full of junk with five or six dogs running around there barking and frankly messing the interior of the truck up so that it stunk and she's just going into Mexico.  Is the American side really going to stop her and subject her to great scrutiny?  I suggest to you they didn't.  They obviously didn't.  And she knew it.  She knew it.  (Emphasis added.)

Hernandez contends that the prosecutor acted improperly by arguing facts that, in his own words, were "not in the record."

Hernandez did not object to the prosecutors' remarks.  Thus, we review this issue under the plain error standard.  *See United States v. Gracia*, 522 F.3d 597, 599-600 (5th Cir. 2008).  To show plain error, the appellant must show a forfeited error that is clear or obvious and that affects her substantial rights.  *Puckett v. United States*, 556 U.S. 129, 135 (2009).  In the context of improper prosecutorial remarks, the substantial rights prong "sets a high bar," with the determinative question being "whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict."  *United States v. Morin*, 627 F.3d

985, 1000 (5th Cir. 2010) (internal quotation marks and citation omitted), *cert. denied*, 131 S. Ct. 2126 (2011). If Hernandez meets her burden under the first three prongs of the plain error standard, we have the discretion to correct the error but only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See Gracia*, 522 F.3d at 600.

"A prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence." *United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008). It is improper for a prosecutor to make a personal assertion that vouches for the credibility of a witness. *Gracia*, 522 F.3d at 601. Additionally, "[a] prosecutor may not directly refer to or even allude to evidence that was not adduced at trial." *Mendoza*, 522 F.3d at 491.

Even if Hernandez can show that the prosecutors' remarks constituted clear or obvious error, she cannot show an effect on her substantial rights. *See Morin*, 627 F.3d at 1000. The effect of a prosecutor's remarks is evaluated in the context of the trial as a whole. *Mendoza*, 522 F.3d at 492. We consider "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *United States v. Thompson*, 482 F.3d 781, 785 (5th Cir. 2007) (internal quotation marks and citation omitted).

First, the magnitude of the prejudicial effect of the disputed comments was not significant, as the comments were isolated and were immediately followed by references to evidence in the record from which reasonable inferences could be drawn to support the underlying arguments each prosecutor was attempting to make. *See Mendoza*, 522 F.3d at 494-97; *Thompson*, 482 F.3d at 786. Second, the district court's instructions to the jury mitigated any harm from the disputed comments, as the jurors were repeatedly told that the statements of the lawyers were not evidence and that they were to consider only the evidence as observed

by them from witnesses and exhibits that were admitted. *See Thompson*, 482 F.3d at 787.

Third, the evidence against Hernandez was significant. For example, the testimony of Jose Lira, Jordan McCoy, Nicholas Tovar, and Justin Caudle, all co-defendants who had pleaded guilty, indicated that Hernandez transported the firearms into Mexico for the conspiracy. Their testimony was corroborated by the discovery of a piece of gray carpet behind the back seat of Hernandez's truck that matched the type of carpet used to wrap the firearms, records that reflected repeated border crossings by Hernandez during the time of the conspiracy, and the discovery by border patrol agents during one of Hernandez's crossings into the United States that she had $11,170 in cash stuffed inside her bra that she failed to declare. Hernandez has not shown plain error regarding this issue. *See Mendoza*, 522 F.3d at 494-97; *Thompson*, 482 F.3d at 785-88.

Hernandez next argues that the district court abused its discretion when it denied her pretrial pro se motions for substitution of her appointed counsel. "Although an indigent criminal defendant has a right to be represented by counsel, he does not have a right to be represented by a particular lawyer, or to demand a different appointed lawyer except for good cause." *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973). Good cause includes "a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *Id.*; *accord United States v. Simpson*, 645 F.3d 300, 307 (5th Cir.), *cert. denied*, 132 S. Ct. 541 (2011). We review the district court's denial of Hernandez's motions for abuse of discretion. *See Simpson*, 645 F.3d at 307.

According to Hernandez, good cause existed based on a complete breakdown in communication because her counsel impeded the trial preparation process by having Hernandez rendered unavailable while Hernandez's competency to stand trial was being examined and because counsel failed to rectify auditory hearing issues that counsel believed Hernandez was having

5

during their meetings.  Hernandez also contends that an irreconcilable conflict existed because counsel moved for a competency exam after Hernandez declined a plea agreement and because counsel insulted Hernandez during a hearing before the district court by disingenuously stating that she believed Hernandez had an auditory hearing issue.

Hernandez's arguments are not borne out in the record, as the assertions in her motions and the statements by her and her counsel to the district court during the hearings involving her motions reflect that Hernandez and her counsel continued to meet and communicate and that Hernandez's complaints mainly related only to her disagreement with counsel's opinion about whether to use of a particular piece of evidence at trial.  Hernandez has not shown that the district court abused its discretion in denying her motions for substitution of counsel.

In her final argument, Hernandez claims that her counsel provided ineffective assistance by failing to object to the government's improper remarks during its closing argument and failing to move for a judgment of acquittal at the close of the evidence.  We resolve ineffective assistance claims on direct appeal only in rare cases where the record allows for a fair evaluation of the merits of the claims.  *United States v. Sanchez-Pena*, 336 F.3d 431, 445 (5th Cir. 2003).  This is not one of those rare cases.  Accordingly, we decline to consider Hernandez's ineffective assistance claims, without prejudice to her ability to raise them in a motion pursuant to 28 U.S.C. § 2255.

*Pedro Daniel Tovar*

In his first argument, Tovar contends that the district court erred in applying a base offense level of 26 instead of 14 under U.S.S.G. § 2M5.2.  "This court reviews de novo the district court's guidelines interpretations and reviews for clear error the district court's findings of fact."  *United States v. Longstreet*, 603 F.3d 273, 275-76 (5th Cir. 2010) (internal quotation marks and citation

omitted).  A factual finding is not clearly erroneous so long as it is plausible in light of the record as a whole.  *Id.* at 276.

Tovar was ineligible for a base offense level of 14 under the version of § 2M5.2 applicable to him if he was accountable for more than 10 firearms.  *See* § 2M5.2(a)(1)-(2) (2010).  Under the rules regarding relevant conduct, the district court was permitted to consider not only the acts committed, aided, or abetted by Tovar personally but also all acts and omissions of others in furtherance of the conspiracy that were reasonably foreseeable by Tovar.  *See* § 1B1.3(a)(1)(A)-(B); *United States v. Rodriguez*, 553 F.3d 380, 395 (5th Cir. 2008).

The trial evidence indicated that Tovar knew the details of the scheme and was present or directly involved in a four straw purchases of firearms by Blanca Tovar and five straw purchases by Elva Hernandes.  Given his knowledge of the nature of the scheme, it was reasonably foreseeable to Tovar during the time of his participation in the conspiracy that other straw purchasers would buy at least two more firearms.  In fact, the evidence shows that Lance Mitchell Coll made two straw purchases of firearms for the scheme during the time of Tovar's participation.  The district court's finding that Tovar was accountable for more than 10 firearms was plausible in light of the record as a whole and thus not clearly erroneous.

In his second argument, Tovar contends that the district court erred when it imposed the two-level enhancement under § 3C1.1 for obstruction of justice based on his failure to appear in court for the reading of the verdict.  The district court's finding that a defendant obstructed justice under § 3C1.1 is reviewed for clear error.  *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008). "Obstructive conduct can vary widely in nature, degree of planning, and seriousness," and the conduct to which the enhancement applies "is not subject to precise definition."  § 3C1.1, comment. (n.3).

Tovar delayed the court proceedings and misled the district court regarding the cause of his absence, caused the district court to authorize a warrant for his arrest after he failed to appear by the time the proceedings adjourned about an hour and a half after he had been contacted and told to appear, and violated the conditions of his bond by traveling out of state without permission. The district court did not clearly err in finding that his conduct constituted obstruction of justice for purposes of § 3C1.1.

In any event, any error by the district court regarding the guidelines issues raised by Tovar would be harmless because the district court indicated that it would have imposed the same sentences on Tovar pursuant to 18 U.S.C. § 3553(a), even if all of Tovar's objections to the calculation of his guidelines range had been sustained and the lesser guidelines range advanced by him were applicable. *See United States v. Bonilla*, 524 F.3d 647, 657-58 (5th Cir. 2008).

In his final argument, Tovar contends that his sentence is substantively unreasonable because the district court failed to adequately consider the need to avoid an unwarranted sentencing disparity with similarly situated co-defendants. Tovar has not established the existence of any sentencing disparity because he does not cite any evidence that lower sentences were imposed in cases with facts substantially similar to his case. *See United States v. Sanchez-Ramirez*, 497 F.3d 531, 535 n.4 (5th Cir. 2007); *United States v. Smith*, 440 F.3d 704, 709 (5th Cir. 2006). Apart from Hernandez, who received a 360-month sentence, all of Tovar's other co-defendants who were convicted had pleaded guilty prior to Tovar's trial. Tovar's sentence is presumptively reasonable because it falls within his properly calculated guidelines range, *see United States v. Gomez-Herrera*, 523 F.3d 554, 565-66 (5th Cir. 2008), and he has not shown that his sentence constituted an abuse of discretion.

The judgments of the district court are AFFIRMED.